Plaintiff, alleging that he was violently assaulted, beaten, bruised and stamped by Francis L. Freeman and his sons, Pat and Jack, in the store of F.U. McCartney, in the Village of Robeline, Louisiana, on April 22, 1944, instituted this suit against father and sons to recover judgment for a large amount in damages. Jack Freeman is alleged to be a minor. He was not served with process, did not except or plead to the suit and during trial the lower court, on its own motion, over plaintiff's objections, dismissed the action as to him.
Answering, Francis L. Freeman denied that he participated in the fight between his sons and plaintiff other than after entering McCartney's store, while the fight was in progress, he induced his son, Pat, who was then on top of plaintiff, to abandon the fight and cease beating him. He denies that his son, Jack, to any extent, participated in the fight and also denies that there was a conspiracy, as alleged, between him and his sons to administer a whipping to plaintiff or inflict upon him other physical injuries. He also avers that the fight between plaintiff and Pat Freeman was precipitated by the former first attempting to strike the latter over the head with a walking cane.
The answer of Pat Freeman, in the main, is practically the same as that of his father. He also avers that when he and his brother, Jack, entered McCartney's store he discovered, for the first time, that plaintiff was therein; and that when within a few feet of him, plaintiff "threw (drew) back his walking stick, which was a large heavy one, and attempted to strike your defendant over the head"; that at this juncture of events Jack Freeman caught hold of the end of the stick and jerked it out of plaintiff's hands; that he (Pat) and plaintiff then engaged in a fist fight until his father arrived and prevailed upon him to quit beating the plaintiff. For these alleged reasons this defendant takes the position that plaintiff was the aggressor in the difficulty and concludes by averring that he beat him up only to protect himself.
There was judgment for plaintiff against Pat Freeman for $150.00, plus expenses incurred in treating his wounds and injuries, or the sum of $217.52. The demand as to Francis L. Freeman was rejected.
[1] Plaintiff appealed to this court and complains of the inadequacy of the judgment and of the court's action in dismissing the suit as to Jack Freeman. He contends that Francis L. Freeman should have been condemned and held liable to him for the tortious acts of his minor son. However, Francis L. Freeman was not sued on this theory. He was sued as a principal participant in the fight. Pat Freeman did not appeal, nor has he answered the appeal taken by plaintiff.
[2, 3] Minority is not a tenable defense against liability for damages that result from offenses and quasi offenses. Obligations that arise from offenses and quasi offenses committed by persons affected by the disability of minority are enforceable against a minor the same as though he had attained majority. R.C.C. Articles 1785 (par. 5), 1874, and 2227. This question was presented and passed upon in Kern v. Knight et al., 13 La. App., 194, 199, 127 So. 133. It is true that under Article 2318 of the R.C.C. the father is responsible for damages occasioned by his minor child, residing with him. But this liability does not relieve the minor personally from being held to answer in damages to the aggrieved person or persons against whom he has committed an offense or quasi offense. The laws on the subject simply create a dual responsibility in favor of the injured party or parties.
[4] As Jack Freeman did not plead nor in any other manner ask for dismissal of the suit against him, nor was such action sought by any other person on his behalf, the lower court, over plaintiff's objection, erred in dismissing the suit as to him.
[5] In written reasons for judgment, the lower court found and held that Francis L. Freeman was not implicated in nor to any extent responsible for the fight between his sons and the plaintiff, and for this reason absolved him from liability for the results thereof. Appellant does not seriously complain of this ruling. The record, in *Page 526 
our opinion, clearly supports the court's action in this respect. This leaves in contest only the amount of judgment to which plaintiff is entitled against Pat Freeman.
[6] The trial judge found and held that Pat Freeman was the aggressor in the fight and that plaintiff attempted to strike him with the light walking cane only after he had been struck by Pat, and that Jack Freeman jerked the cane from plaintiff's grasp before he could apply it to Pat's body. In reaching this conclusion the trial judge accepted the testimony of Mr. McCartney and in doing so we believe he was fully warranted.
It is important to here note that plaintiff is the father of twelve children, and at the time of this difficulty was sixty-three years old, while Pat Freeman was twenty-eight years of age, strong and vigorous.
Appellant seriously complains of the following statement of the trial judge and argues that there is nothing in the record to support it, so far as concerns the ability of Pat Freeman to respond to judgment, to wit: "Pat Freeman is in no sense a wealthy man and the law in such cases sanctions a consideration of the ability or lack of it of a tort feasor to pay. It could serve no useful purpose to condemn a man in damages for more than he could possibly pay."
The record is barren of any testimony touching the financial condition of Pat Freeman or his ownership of property that could be subjected to execution. Evidently the judge acted upon his own personal knowledge of this man's financial condition and was influenced thereby in making the statement of which plaintiff now complains.
[7] The principle that motivated the lower court in rendering so small a judgment against Pat Freeman is recognized by the jurisprudence of this state. Ability to pay, or the lack of it, is a proper matter to be considered in determining an award in a damage suit. But application of the principle should not be carried to extremes. See Gallman v. Young, 6 La. App. 137, 138, and cases cited therein; Weadock et al. v. Eagle Indemnity Company et al., La. App., 15 So.2d 132, 146.
[8] The violent assault upon and beating of plaintiff was, we find from the record, as did the trial judge, without justification. It was malicious, and there are strong circumstances that indicate such action was premeditated. An hour or two before the fight occurred one of plaintiff's sons and Jack Freeman had an encounter in the village of Robeline about a disparaging remark the Smith boy had made to a prospective patron concerning the qualifications of a stallion owned by Francis L. Freeman. It is shown that while the participants in this fight were giving bond at the Mayor's office to appear and answer charges preferred by the village marshal, plaintiff remarked that he would get his gun and kill all the Freemans. He had made no attempt to execute this threat but had remained continuously on the streets and in the business houses of the village until the second fight occurred. Pat and Jack Freeman testified that they went into McCartney's store to purchase cigarettes. They had immediately prior, left a store on the opposite side of the street, crossed over and traveled practically a block to get to the McCartney store, passing business places that handled cigarettes. The store from which they left before crossing the street also sold them.
It requires no stretch of the imagination to perceive in the action of these young men a determination to even scores with plaintiff, and having seen him go into McCartney's store decided then and there was the opportune time to do so. This conclusion is strongly buttressed by the question Pat addressed to plaintiff as they faced each other in the store: "Have you got your gun?". He then struck plaintiff.
Plaintiff, although resisting the attack upon him to the best of his ability, was no match for his much younger assailant. He was beaten mercilessly to the floor and then kicked and stamped, when his physical ability to fight back was practically exhausted. He was assisted to his feet and with blood pouring from face and head wounds, made his way across the street to the store of the village mayor, who furnished transportation to convey him to his home a few miles distant. The physician *Page 527 
who first attended plaintiff a few hours after the fight, found he was: "bruised and skinned in many places on body, face and head. He was bleeding from nose, right ear; had gash in head. He passed blood from kidneys * * * This man was not at himself mentally at the time, — was suffering severely from his wounds."
There were no broken or fractured bones but plaintiff has suffered greatly and continuously to the date of trial, some thirteen months after the fight. He was a patient in the Charity Hospital in Shreveport for over two weeks and when admitted the provisional diagnosis was "head injuries", and when discharged the final diagnosis was "contusion to head".
Plaintiff sued for damages for permanent disability, pain, suffering and humiliation. Obviously he suffered intensely for quite a while, — in fact, at date of trial he was not free of pain traceable to the beating he received. The experience surely humiliated him some. We are not convinced that the injuries have left him totally and permanently disabled to pursue the various lines of endeavor followed by him prior to the fight.
[9, 10] It is shown that plaintiff in the several communities in which he had lived for the past decade or two did not enjoy a favorable reputation for peace and quiet. He is evidently of that number of persons disposed to create rather than discourage dissension that often leads to serious consequences between neighbors. His social and home life, when viewed in the light of recognized standards for such, do not measure up to what they should be. But, with all of this, as said in Caspar v. Prosdame, 46 La. Ann. 36, 14 So. 317: "If a person has no character, or even bad character, he has a right to be let alone; to immunity from personal attacks and assaults.
"It is a personal right, independent of character."
All things considered, the judgment should and will be materially increased. The facts warrant a much larger increase than we have decided to award. We are influenced to some extent in this connection by the trial judge's appraisal of Pat Freeman's ability to respond to judgment.
For the reasons herein assigned, the judgment appealed from is hereby amended by increasing the amount thereof to One Thousand Two Hundred Seventeen and 52/100 Dollars, and as thus amended, it is affirmed with costs.
It is further ordered that the action of the lower court in dismissing the suit as to Jack Freeman be, and it is hereby annulled and set aside, and the suit as to this defendant is hereby ordered reinstated on the docket of the court a qua to be further proceeded with as is warranted by law.