80 So.2d 537 (1955)
Norman FENERTY
v.
Marco CULOTTA, Angelina Conzonere, Widow of Charles Cosimo Culotta, Mother and Natural Tutrix of Marco Culotta, and Leonard Culotta.
No. 20385.
Court of Appeal of Louisiana, Orleans.
May 23, 1955.
Rehearing Denied June 15, 1955.
Writ of Certiorari Granted July 1, 1955.
*538 Louis Fenner Claiborne and Eugene D. Brierre, New Orleans, for plaintiff and appellant.
Frank C. Moran, Jr., New Orleans, for defendants and appellees.
McBRIDE, Judge.
The accident which gave rise to this suit occurred on November 22, 1952, about 1:30 o'clock a. m., within the intersection formed by Freret and Adams Streets in the City of New Orleans, and involved a Chevrolet automobile owned by Norman Fenerty and driven by him in an uptown direction on Freret Street, and a Pontiac coupe traveling on Adams Street driven by Marco Culotta, an unemancipated minor 19 years old. There is some divergence of opinion as to which car hit the other, but our analysis of the evidence convinces us that the front of the Fenerty automobile struck the front portion of the right side of the other vehicle.
Fenerty sues Marco Culotta and his mother and natural tutrix, Mrs. Angelina C. Culotta, in solido. Plaintiff also impleaded a third defendant, Leonard Culotta, but as to said defendant plaintiff has abandoned all of his claims.
Plaintiff is seeking to recover the sum of $9,169.91, which consists of damages sustained by his automobile, plus towing charges, and also for personal injuries, medical costs, and loss of wages. After the matter was heard on its merits, the trial judge reopened the case for the purpose of permitting the plaintiff to produce additional evidence with reference to his damages; after such additional evidence was adduced there was judgment dismissing plaintiff's suit. Plaintiff has appealed.
Marco Culotta, among other things, is charged with having been negligent in failing to keep a proper lookout. Culotta, who was driving toward the lake, desired to make a crossing of Freret Street; he claims that upon reaching the intersection he brought his automobile to a complete stop in obedience to a stop sign which confronted him. He states that a number of automobiles parked along Freret Street to his right entirely obliterated his view in that direction and he could not determine from his stopped position just what were the traffic conditions on Freret Street. Culotta states that he then "eased" the nose of his automobile out into Freret Street in order that he might ascertain if there were oncoming vehicles to his right, and that as he emerged into Freret Street and traveled a short distance his automobile was struck by the Fenerty automobile. Under such circumstances as recited by young Culotta there is no question that he was grossly negligent. See Hardy v. M. W. Salomon & Son, La.App., 78 So.2d 73.
The only serious question in the case as regards plaintiff's right of recovery is whether he himself was negligent; he is charged by the defendants with having *539 been contributorily negligent in that he drove his automobile at an excessive rate of speed and failed to avert the collision notwithstanding that he had the last clear chance to do so.
Fenerty insists that he was driving at the rate of 20 miles per hour, which is the maximum permissible speed at that point on Freret Street. On the other hand, both Marco Culotta and Joseph Carambat, the latter being a young man who was riding as a passenger in the car driven by Culotta, testified that Fenerty's automobile was traveling at an excessive rate of speed, but their testimony fails to make any impression on us. Culotta's estimate of Fenerty's speed was 35 or 40 miles per hour, but this carries little weight for the reason that Culotta first saw the Fenerty car only a split second before the impact, and it is manifest that there was no ample opportunity for him to estimate with any degree of certainty what Fenerty's speed might have been. In telling how he arrived at his conclusion that Fenerty was speeding Culotta said:
"* * * by him throwing me around completely to South Carrollton Avenue, I should say he must have been moving over 20 miles an hour to do that; I figure it was about 40 miles an hour, 35 or 40."
Carambat's statement that Fenerty's speed was between 40 and 50 miles an hour can be given little consideration for the same reason. He did not see plaintiff's automobile until just before the impact and it was utterly impossible for him to have arrived at any intelligent estimate of how fast Fenerty came into the intersection.
Counsel for the defendants advances the argument that the behavior of the respective automobiles after the crash attests to the fact that Fenerty must have been driving at an excessive rate of speed. After striking the Culotta car, Fenerty's Chevrolet did travel for a distance of 44 feet and came to a stop only after striking a tree on Freret Street, but Fenerty has a complete and most plausible explanation for this. He asserts that the impact had the effect of throwing him off balance and his foot "jammed on the gas and I shot forward and hit the tree." Neither does the fact that the front portion of the Culotta automobile was knocked in a counterclockwise direction and to a ninety-degree angle tend in any way to indicate that the Fenerty automobile was traveling at more than the legal rate of speed. No one can say with any degree of accuracy what vehicles might do or what course they may take after colliding, and the positions at which the respective cars came to rest after the impact would shed little or no light on the question whether Fenerty was driving at an excessive speed. We fail to find anything in the testimony or in the physical facts sufficient to overcome the positive testimony of Fenerty that he was driving on Freret Street at not more than 20 miles per hour.
Defendants contend also that Fenerty had the last clear chance of averting the accident. Fenerty's statement, which is uncontradicted even by Culotta and his passenger, is that just as he entered into the intersection the Culotta automobile suddenly came out of Adams Street and into his path and that upon seeing the Culotta car he endeavored to apply his brakes in order to avoid striking it but that he was unable to successfully do so in such short stopping space. We do not believe that the doctrine of the last clear chance has any room at all for application in this case.
Our conclusion is that the accident was solely caused by virtue of the negligence of Marco Culotta, and under the law he and his mother and natural tutrix, Mrs. Angelina C. Culotta, are liable unto plaintiff jointly and in solido to the extent of his damage.
We are constrained to say in connection with the fixing of plaintiff's damages that we experienced considerable difficulty. Fenerty sustained the physical injuries not when the two vehicles crashed but as a result of his automobile striking the tree on Freret Street. He was taken to the Veterans Hospital and his testimony is that he *540 remained in the hospital under treatment for a period of thirty days. His medical expenses amounted to $639, which sum, of course, he is entitled to recover.
In his petition Fenerty claims $715.91 for "Repair of damages to automobile" and also the sum of $10 for "Towing charge to haul car from scene of accident." Fenerty testified that he made no repairs to the automobile for the reason that he did not have sufficient funds with which to pay a repair bill and could not find anyone who would do the work on a credit basis, and as a result he was forced to sell the automobile in its damaged condition and received $250 from the purchaser for it. He stated that the value of the car before the accident was somewhere between $1,050 to $1,100. There is no showing what it would have cost to place the automobile in the same condition it was prior to being damaged, so, therefore, Fenerty has failed to prove the amount of damage inflicted upon the automobile. The difference between the price at which the automobile was sold and its value before the accident cannot be taken into consideration and used as the standard to fix the amount of his damages. The automobile was susceptible of being repaired and the proper award for damage to an automobile is the amount it will cost to put the automobile in the same condition as it was before the accident. As there is absolutely no evidence bearing on this point, it follows there can be no recovery. It does not appear from the evidence what amount, if any, Fenerty paid as a towing charge for the removal of the automobile from the scene after the accident.
Plaintiff also makes claim for $305 for the loss of one month's wages. His testimony is that his salary was $305 per month. However, he made the admission that he was entitled to eighteen days' sick leave and this being so the defendants are entitled to a credit for any amounts received by plaintiff from the employer while on sick leave, and we compute this to amount to about $10 a day or $180 for the eighteen days for which Fenerty was paid, thus leaving a net salary loss of $125.
In connection with his attempt to prove his physical injuries plaintiff sought to introduce into the evidence a certified copy of the hospital chart of Veterans Hospital, the introduction of which was objected to by counsel for defendants. The trial judge refused, and correctly so, to receive in evidence the certified copy of the chart except that portion of it which pertains to the treatment accorded plaintiff by Dr. Millard E. Byrd, Jr., who is the resident physician in surgery at Veterans Hospital and who appeared as a witness on behalf of plaintiff. The only statute law in Louisiana we know of pertaining to the admissibility of hospital charts as evidence is LSA-R.S. 13:3714 which in effect provides that certified copies of a chart or record of either of the Charity Hospitals of the State shall be received in evidence as prima facie proof of its contents. The chart of the Veterans Hospital is not admissible in our state courts under Title 38 U.S.C.A. § 456, as this Federal statute has application only in courts of the United States and provides that in said courts certified copies of files, records, and reports in the hands of the Administrator of Veterans' Affairs may be received in evidence.
All that Dr. Millard E. Byrd, Jr., the only medical expert appearing at the trial, could testify to from his own knowledge was that he removed the suturing from Fenerty's knee.
Fenerty in recounting the extent of his injuries had this to say:
"I had a busted lip, two upper and lower teeth knocked loose, a split knee that had to be stitched up, three ribs fractured, the lung abrased, and water on the chest."
He further explained:
"Well, my leg, I couldn't bend the knee because it was wrapped in a cast, to keep the stitches from breaking; I couldn't rest myself because of the pain in the chest, without pulling *541 up with the left hand in the bed, because of the terrific pain; I couldn't turn from side to side, had to lay in one position; that lasted about two weeks, and I was in bed another week, or so, but I could move; and I had a terrific cough as a result of, according to the doctors, the abrasion of the lung; and every time I coughed, it was like my chest was splitting open; that was about the extent of the physical pain."
We can only repeat that it is a most trying and difficult task to arrive at the quantum Fenerty is entitled to recover for his physical injuries. The meager statement made by Dr. Byrd and the testimony of Fenerty given from the witness stand as a claimant and from a layman's viewpoint are of little assistance, but after all is said and done Fenerty's injuries must have been of a somewhat serious and painful nature otherwise we do not believe that it would have been necessary to confine him to the hospital for a period so long as thirty days.
Young Marco Culotta and his mother are unquestionably in an impoverished condition as it appears from the certificate of their counsel they are unable to afford the cost and expense of a printed or multilithed brief, and accordingly we granted an order permitting typewritten briefs to be filed in their behalf in this case. They are not protected by liability insurance. We are told that these defendants have some sort of an interest in a succession which is now under administration, but we are satisfied that the amounts which they can expect to eventually receive from the succession are modest. It is well recognized that courts have the right, in assessing damages for personal injuries, to take into consideration the ability of the defendant to pay. Weadock v. Eagle Indemnity Co., La.App., 15 So.2d 132; Termini v. Aetna Life Ins. Co., La.App., 19 So. 2d 286; Neyrey v. Maillet, La.App., 21 So.2d 158; Smith v. Freeman, La.App., 31 So.2d 524; Landry v. News-Star-World Pub. Corp., La.App., 46 So.2d 140. In view of this and also in view of the paucity of evidence bearing on the exact nature and extent of plaintiff's injuries, we believe that in addition to the allowance for his medical expenses and for the loss of wages that the plaintiff is entitled to recover from the defendants the sum of $1,000.
Therefore, the judgment insofar as it dismisses plaintiff's suit as against Marco Culotta and Mrs. Angelina Conzonere, widow of Charles Cosimo Culotta, be and the same is hereby annulled and set aside, and it is now ordered, adjudged and decreed that plaintiff have judgment against Marco Culotta and Mrs. Angelina Conzonere, widow of Charles Cosimo Culotta, mother and natural tutrix of Marco Culotta, jointly and in solido, for the full sum of $1,764, with legal interest from judicial demand until paid. In all other respects the judgment appealed from is affirmed.
Defendants are to pay the costs of both courts.
Reversed in Part; Affirmed in Part.