100 So.2d 252 (1958)
Octave LACAZE, Plaintiff-Appellant,
v.
Ryan HORTON, Defendant-Appellee,
American Surety Company of New York, Intervenor.
No. 8770.
Court of Appeal of Louisiana, Second Circuit.
January 21, 1958.
*253 Gravel, Humphries, Sheffield & Mansour, Alexandria, for appellant.
Gist, Murchison & Gist, Alexandria, for intervenor.
G. F. Thomas, Jr., Natchitoches, for appellee.
HARDY, Judge.
This is an action for the recovery of damages resulting from personal injuries sustained in an automobile accident. To these proceedings the American Surety Company of New York intervened, praying for judgment against the defendant in the sum of $2,468.30, representing amounts paid to and for plaintiff as medical expenses and workmen's compensation payments. After trial judgment was rendered in favor of plaintiff and intervenor and against the defendant in the principal sum of $2,468.30, being the exact amount claimed by intervenor. From this judgment *254 plaintiff has appealed. Defendant has neither appealed nor answered the appeal taken by plaintiff. Concededly, the only issue tendered by this appeal concerns the quantum of damages recovered by plaintiff.
The automobile collision which gave rise to this suit occurred in Natchitoches Parish on October 3, 1952. Plaintiff, a passenger in a vehicle driven by his employer, sustained serious injuries which are detailed in medical reports included in the record before us, admitted by agreement in lieu of depositions of the doctors. These reports established the injuries suffered by plaintiff as severe concussion and shock; lacerations of the scalp, left ear and face; hematoma of the right eyelid; multiple and severe contusions and abrasions; severe contusions of the spleen and left kidney; fracture of the eleventh rib on the left side, and the loss of several teeth. Plaintiff was hospitalized until October 18, 1952, and one of the examining physicians could find no reason which would prevent plaintiff's return to his occupation, that of a farm and cotton gin laborer, as of January, 1953. However, plaintiff, after being paid compensation for a period of twenty-two weeks at the rate of $20.80 per week, compromised his further claims against the compensation insurer for the sum of $1,250. On trial of the case, March 30, 1954, plaintiff testified that he had not recovered from the effects of his injuries and that he was first able to return to work in September of 1953, which testimony was uncontradicted. There is no evidence which would indicate that plaintiff has any means of support save as the result of his manual labor, upon which he and "thirteen head of children" depended for a living.
On the basis of the medical reports and the testimony of plaintiff, none of which was contradicted, we can only conclude that plaintiff did sustain serious and painful injuries as the result of which he was totally disabled for a period of almost one year, and from which, thereafter, he continued to suffer some residual effects. The award made by judgment in the instant case serves to fully compensate the intervenor for its expenditures under its obligations as compensation insurer for plaintiff's employer, but gives plaintiff nothing by way of reparation for his damages. The effect of the judgment is that the plaintiff, who instituted this suit against one whose negligence caused him personal injury, has received nothing, and his efforts to exact reparation from a tort feasor has benefitted solely and exclusively the insurer of his employer. Plaintiff would have been in far better position to have contented himself with the acceptance of his compensation settlement and payment of his medical expenses to which he was entitled by reason of his employment and to have foreborne from asserting any claim for damages caused by defendant's negligence. Unquestionably, plaintiff suffered a complete loss of wages during his disability from October 3, 1952 to September, 1953, a total of forty-eight weeks, which, on the basis of the rate of compensation payments, must be computed at $32 per week. In addition to this actual monetary loss, plaintiff is further entitled to a substantial allowance in the nature of damages caused by pain and suffering.
The reason for the bare minimum of allowance of recovery is clearly indicated in the record and is summarized by counsel for defendant, in brief before this court, in the following words:
"The record shows that Mr. Horton (the defendant) is a man of limited means and his health is such that he is barely able to provide for his family. Unfortunately, he had no public liability insurance covering the vehicle that he was driving at the time of the accident and his ability to respond in damages is very limited. It is well recognized that Courts have a right, in assessing damages for personal injuries, to take into consideration the ability of the defendant to pay. Weadock v. Eagle Indemnity Co., [La. App.,] 15 So.2d 132; Termini v. Aetna *255 Life Ins. Co., [La.App.,] 19 So.2d 286; Neyrey v. Maillet, [La.App.,] 21 So.2d 158; Smith v. Freeman, [La.App.,] 31 So.2d 524; Landry v. News-Star-World Pub. Corp., [La.App.,] 46 So.2d 140; Fenerty v. Culotta, [La.App.,] 80 So.2d 537."
The principle which is urged by counsel for defendant, attested by the holdings of our courts in the above cited case, is well recognized and established in our jurisprudence. However, we further approve the statement made by Judge Taliaferro in the opinion for this court in Smith v. Freeman, supra [31 So.2d 526]:
"Ability to pay, or the lack of it, is a proper matter to be considered in determining an award in a damage suit. But application of the principle should not be carried to extremes." (Emphasis supplied.)
The public policy of this State has been declared in the Motor Vehicle Safety Responsibility Act (No. 52 of 1952, LSA-R.S. 32:851 et seq.), which legislation was designed, among other purposes, according to the title of the act:
"To eliminate the reckless and irresponsible driver from the highways."
The provisions of the above act, which became effective October 1, 1952, only three days before the occurrence of this accident, require the furnishing of security by insurance or bond, etc., in a minimum amount of $5,000 to cover bodily injury or death of one person in any one accident.
The evidence in the instant case does establish the fact that defendant is a man of limited means, but we do not think it justifies the conclusion, as argued by counsel, that "* * * his health is such that he is barely able to provide for his family." After consideration of all the facts bearing upon the opposed contentions of the parties litigant, we are impelled to the conclusion that the judgment in the instant case is an extreme and unwarranted application of the principle that, in fixing the quantum of damages allowed, consideration should be given to the ability of a defendant to pay. It must be borne in mind that this principle is not intended to completely relieve a defendant of liability for reparation of damages inflicted by his own negligence, nor should it be considered as justifying the reduction of the allowance of damages to a bare minimum. Either of these alternatives, in our opinion, would be an extreme application of the principle and would result in effecting a gross injustice toward a plaintiff, under the guise of the application of a humane consideration for the plight of an impecunious defendant.
For the reasons assigned the judgment appealed from is amended by increasing the amount awarded in favor of plaintiff to the principal sum of $4,000, out of which the claim of the intervenor, American Surety Company of New York, to the extent of the principal sum of $2,468.30, is entitled to be paid by preference and priority, and, as amended, the judgment is affirmed at the cost of defendant-appellee.