104 So.2d 279 (1958)
Leo L. LE BLANC, Jr., Plaintiff-Appellee,
v.
SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY et al., Defendants-Appellants.
No. 4636.
Court of Appeal of Louisiana, First Circuit.
June 30, 1958.
*280 Taylor, Porter, Brooks, Fuller & Phillips, Tom F. Phillips, Baton Rouge, for appellant.
George R. Blum, Donaldsonville, Durrett, Hardin & Hunter, Baton Rouge, for appellees.
ELLIS, Judge.
This suit was instituted by Leo L. LeBlanc against Omer Sanchez and Son, a commercial partnership composed of Omer Sanchez and Telesmar Sanchez, Southern Farm Bureau Casualty Insurance Company, the liability insurer of the partnership, and Sylvester Page, an employee of the partnership. Plaintiff seeks to enforce a claim for personal injuries, property damage and expenses resulting from an accident which occurred on December 2, 1955. The defendants deny liability and alternatively plead contributory negligence.
The trial court granted judgment for the plaintiff in the amount of $6,000 for personal injuries, $270 for loss of wages, and $728.50 for medical bills and other incidental expenses. Plaintiff's car was a constructive total loss and his claim for costs of transportation was denied. The trial court denied relief on the loss of the car for lack of sufficient evidence concerning the valuation of the automobile just prior to the accident.
From this judgment the defendants have perfected a suspensive appeal. Most of the facts presented have been agreed upon, both on the trial on the merits and on this appeal. The uncontested facts found in the record are as follows:
On December 2, 1955, at some time within the hour before sunrise, Leo L. LeBlanc was driving north in his 1952 Plymouth Sedan at 45 to 59 miles per hour. LeBlanc had left his home in Donaldsonville at about 5:30 A.M. and was on his way to work for 7:00 A.M. at the Kaiser Aluminum Plant in Baton Rouge. This plant was about 40 miles from his home. LeBlanc had traveled from 8 to 10 miles from his home. As he drove, he was saying his rosary. An oncoming car, with its lights on, passed LeBlanc. As it passed, LeBlanc noted an obstruction a short distance away and blocking his path. He veered to miss the obstruction and discovered that another on-coming car with its lights on blocked his left lane. He then swerved back into his right lane and put on his brakes running into the rear end of the obstruction which proved to be the rear end of two cane carts and a tractor being driven slowly up the highway in tandem. The highway at the point of the accident was straight, with two lanes, and about 18 feet wide. The pavement was wet. The cane carts were loaded with burned cane, which was a dark color and boards across the rear end of the cart extended from the base of the cart a distance of 2½ feet. There is an indication in the record that these boards were spattered with mud from operating during rainy weather. The top speed of the tractor without two cane carts attached was 15 miles per hour. There were no tail lights or reflectors on the carts and the tractor was being operated without lights. The accident occurred approximately 1½ miles from the shed from which the tractor was driven that morning. The tractor was operated by Sylvester Page within the course and scope of his employment with Omer Sanchez and Son. The partnership carried insurance with Southern Farm Bureau Casualty Insurance Company with coverage of $25,000. Sunrise was at 6:45 A.M.
The main points on which there is a divergence of opinion, and testimony, concerns the time at which the wreck occurred, *281 and the degree of visibility at the time of the wreck.
Defendants urge, on appeal, that there is substantial testimony in the record to the effect that the accident occurred some time between 6:05 A.M. and 6:15 A.M. on December 2, 1955. However, considering only the testimony of defendants' witnesses, it is quite difficult to reconcile their testimony with defendants' version of the facts. They contend that there was ample natural light at the time to justify the operation of the tractors and cars without lights. Sylvester Page stated that he got to work at 6:00 A.M., greased the tractor well, and put gas in it, and then drove onto the highway and turned north toward White Castle. The accident occurred about 1½ miles from the sheds where he started. Omer Sanchez testified that he drove up soon after the accident occurred; that he directed traffic for a short time and then drove 1½ miles to the nearest telephone and reported the wreck to Emanuel Gomez, a state police officer. The investigating police officer testified that he received a call reporting the accident at 6:15 A.M. Taking all of this testimony into consideration, it is difficult to see how Sylvester Page could arrive at work at 6:00 A.M., grease the tractor, put gas in it, and drive to the highway on a gravel road and then turn north up the highway and reach a point 1½ miles from the starting point at the time the wreck occurred. Allow five minutes for Omer Sanchez to reach the scene, direct traffic for a short time and then drive half a mile to the nearest telephone and make a call at 6:15 A.M. All of this activity seems crowded into too short a space of time. It would take the tractor approximately 7½ minutes to get from the sheds to the point of the accident. Judging only from the testimony in the record the trial judge's findings seem well substantiated.
Another significant factor is the fact that the investigating officer entered 6:00 A.M. in his report as the time of the accident. Defendant had been taken from the scene by the time the officer arrived.
We are satisfied that the accident occurred approximately at 6:00 A.M. give or take a few minutes one way or the other.
As stated above the weather was admittedly inclement at the moment of the accident with either a light rain falling or a light mist in the air. The plaintiff was driving with his lights on at a rate of from 45 to 50 miles per hour. Just after he passed an oncoming car, which had its lights on also, he noticed an obstruction directly ahead.
Defendants strongly urge that the fact that plaintiff was saying his rosary just prior to the time of the accident is proof that he was not keeping a proper lookout. This court is not prepared to say that it is negligence per se for one to operate a motor vehicle and say their rosary at the same time. This should not be any more dangerous or negligent than rolling a window up, thinking of personal matters while driving or talking at the wheel. Nor may we say that this factor was a proximate cause of the accident. We will not find, without more proof than was presented herein, that these actions constituted negligence of such a nature as to bar plaintiff's recovery herein.
It follows that defendant's negligence in operating an unlighted vehicle at a very slow rate of speed on the open highway without lights or reflectors at a time when it was dark or very nearly dark and the weather was inclement constituted the proximate cause of the insuring accident. The trial court's findings are not found to be manifestly erroneous and are supported by the facts and the following statutes:
LSA-R.S. 32:290 Lights required; generally
"Every vehicle operated upon a public highway in this State between one half hour after sunset and one half hour before sunrise, or at any other time when there is not sufficient light to render clearly discernible any person *282 on the highway for a distance of two hundred feet ahead, shall be equipped with lighted front and rear lamps as required by this chapter for the different classes of vehicles, subject to the exemptions and conditions hereinafter prescribed."
LSA-R.S. 32:293 Motor vehicles; rear lamps
"Every motor vehicle and every drawn trailer or semi-trailer shall carry at the rear a lamp of a type which has been approved by the department and which exhibits a red light plainly visible, under normal atmospheric conditions, from a distance of five hundred feet to the rear and so constructed and placed that the number plate carried on the rear of such vehicle shall under like conditions * * * be read from a distance of fifty feet to the rear."
These statutes are not to be literally interpreted in every instance, but must be applied in view of the surrounding circumstances.
The exception to the general rule upon which this decision is based has been recognized in many cases similar to the case at bar. Some of these are the cases of Carter v. Le Blanc Lumber Company, La. App., 37 So.2d 471, Hicks v. Tilquit, La. App., 82 So.2d 100 and Gaiennie v. Cooperative Produce Company, 196 La. 417, 199 So. 377.
A case presenting quite similar facts to those presented herein is the case of Suire v. Winters, 233 La. 585, 97 So.2d 404, 408. We quote with approval the following portion of the Suire opinion:
"We conclude that the circumstances immediately surrounding the accident here under consideration, the height and color of the cane truck, its size and shape, the absence of lights thereon, * * * the absence of warning by anyone of the presence of the truck, the brightness of the headlights of the opposing oncoming car which blinded plaintiff, the moderate speed traveled by plaintiff prior to the accident and the fact that his lights were properly on dim reflecting downward and under the high trailer are all facts that lend themselves to a conclusion which exonerates the plaintiff, Irving C. Suire, from the charge of contributory negligence."
Defendant cited the cases of King v. Risdon & W. E. Holoman Lumber Company, La. App., 76 So.2d 548, Monteleone v. Dularge Packing Company, La.App., 73 So.2d 335; Odom v. Long, La.App., 26 So.2d 709, and Louisiana Power & Light Co. v. Saia, 188 La. 358, 177 So. 238. These cases were found to be inapposite under the peculiar set of circumstances presented herein.
Judgment was granted herein for $6,000, for plaintiff's injuries which consisted of three broken ribs, a mild concussion, and the loss of six teeth and the incidental pain and suffering occasioned thereby.
The awards granted by the trial court in this suit are in line with awards made for similar injuries in the recent cases of Fike v. McGraw, La.App., 88 So.2d 713 and Martin v. Bruchhaus, La.App., 74 So.2d 316.
We will not disturb the quantum of this portion of the judgment.
The claim for the loss of the use of plaintiff's automobile, which was a total loss, was rightly denied under the authority of Vest v. State Through Department of Highways, La.App., 90 So.2d 896, and Drewes v. Miller, La.App., 25 So.2d 820.
In the recent case of Fenerty v. Culotta, La.App., 80 So.2d 537; 228 La. 649, 83 So.2d 888 is found a basis for the credit on loss of wages for any amounts paid by plaintiff's employer while he was convalescing. The trial court was correct in allowing such a credit.
*283 Since there was no evidence introduced into the record concerning the actual value of plaintiff's automobile just prior to the accident (although it is shown that the car was a 1952 Plymouth Sedan which was purchased for $975 on February 5, 1954) this court will disallow this item of damages, as did the trial court. Relief is denied for plaintiff's failure, on the trial on the merits, to afford any basis for a money judgment on this item.
The other awards were not questioned on appeal.
For the reasons assigned above, the judgment of the trial court is affirmed in all of its particulars and costs of this appeal are taxed to the defendants herein.
Affirmed.