143 So.2d 606 (1962)
Otha I. HUDGENS, Plaintiff-Appellee,
v.
H. P. MAYEAUX et al., Defendants-Appellants.
No. 549.
Court of Appeal of Louisiana, Third Circuit.
July 5, 1962.
Rehearing Denied July 27, 1962.
*607 Gist, Murchison & Gist, by Howard B. Gist, Jr., Alexandria, for defendants-appellants.
Holt, Holt, Kramer & Hamm, by Bernard Kramer, Alexandria, for plaintiff-appellee.
Stafford & Pitts, by John L. Pitts, Alexandria, for intervenor-appellee.
Before TATE, FRUGE, and HOOD, JJ.
TATE, Judge.
This is a personal injury suit arising out of a left-turn collision. The substantial question of this appeal is whether the plaintiff, *608 as left-turning driver, was contributorily negligent so as to bar his recovery. If so, then the trial court judgment in his favor and against the other driver and the latter's liability insurer must be reversed.
The accident in question occurred at an intersection in the business district of the city of Alexandria. The plaintiff Hudgens was driving a city bus southerly on Fourth Street. While making a left turn into Jackson Street after having continuously used his directional turn lights to signal such a maneuver, Hudgens' bus was involved in a collision with a jeep station wagon driven by the defendant Mayeaux.
The vehicles collided after the bus had already proceeded leftward across the center line, with the jeep station wagon having drawn entirely into its left lane to pass the bus at the intersection. The defendant Mayeaux was clearly negligent in attempting to pass the plaintiff under the circumstances, in view of the statutory prohibition against passing at intersections (LSA-R.S. 32:233, subd. E) and in ignoring the fully visible and seasonably made left-turn signal previously given by the plaintiff bus driver. Hollabaugh-Seale Funeral Home, Inc. v. Standard Acc. Ins. Co., 215 La. 545, 41 So.2d 212; Nicolle v. Roberts, La.App.Orl., 117 So.2d 622, and cases cited therein.
In urging that the plaintiff Hudgens was contributorily negligent, able counsel for the defendants-appellants contends factually that the plaintiff bus driver suddenly turned left across Mayeaux's immediate path. It is further contended that Hudgens was contributorily negligent as a matter of law, in that he admitted he did not see Mayeaux's vehicle until an instant before the collision, thus allegedly admitting that he did not exercise the lookout required of a left-turning driver before he attempts to execute this dangerous maneuver.
The great preponderance of the evidence, including the placement of the bus and the debris from the collision found by the investigating police officers after the accident, does not support the version of the accident given by Mayeaux, which in substance was that Mayeaux was either abreast of or just a very short distance behind Hudgens at the time the latter commenced his left turn. We find no error in the trial court having discounted as incredible the testimony of Mayeaux and that of another alleged eye-witness (who was not discovered until the day of the trial, almost a year after the accident).
From the testimony of the plaintiff, an oncoming bus driver, some of the passengers on the bus, and the investigating police officers, we think that the trial court correctly found the facts of the accident to be as follows:
Prior to the accident, Hudgens had drawn up to the intersection. Although he had discharged a passenger, he had not drawn into the curb because a parked truck interfered with his access to the bus stop at the curb. With his left-turn signal light on, he waited ten to twenty seconds for a redlight to change, the body of his bus out in the travel lane. When the red light changed to green, having made lookout to his rear and seeing no traffic in his immediate vicinity, Hudgens drew up at a creeping speed (3-5 mph) under the traffic light and then waited for a bus coming from the opposite direction to make a left turn across his front. As Hudgens then eased at this creeping speed of 3-5 mph over the center line, Mayeaux' vehicle flashed by in the lane across the center line reserved for approaching traffic and struck the very-slightly protruding front wheel of the bus as Hudgens applied his brakes.
While defendants-appellants most forcefully contend otherwise, we find no error in the trial court's conclusion that plaintiff's bus, with fully visible signal of its intention to make a left turn, had commenced its left turn by moving up under the traffic light and pausing for oncoming *609 traffic to turn across its own path, at a time when Mayeaux was at least one-half to three quarters of the block to his rear. As the trial court stated, the defendant "Mayeaux was in a very great hurry to get to his job as he had two trains waiting that he had to get out. In his haste he attempted to pass this city bus and to get around it before the bus completed its left hand turn, and his negligence is the sole proximate cause of the accident."
The defendants-appellants further suggest that, even under his own version, Hudgens is contributorily negligent (even if he had adequately checked to his rear before moving into the intersection) in that he did not once more make observation to his rear before he continued with his left turn after the other bus had crossed his path.
The jurisprudence of this State is established to the effect that before making a left turn the driver of a motor vehicle must ascertain that such a maneuver can be made safely. The giving of a hand or a directional light signal indicating that a left turn is contemplated is only a part of the duty which rests upon the left-turning driver. In addition to giving such a signal he also is required to look and to ascertain, before such a maneuver is undertaken, that the turn can be made without obstructing the passage of approaching or overtaking traffic. See, e. g., Johnson v. Wilson, 239 La. 390, 118 So.2d 450 and Washington Fire and Marine Insurance Co. v. Fireman's Ins. Co., 232 La. 379, 94 So. 2d 295.
On the other hand (as noted with extensive citation of authorities in Faulkner v. Ryder Tank Lines, Inc., La.App. 2 Cir., 135 So.2d 494, certiorari denied, where the left turning driver was permitted recovery in circumstances very similar to the present), the left turning driver is not negligent per se in the event an accident occurs, for he is entitled to commence and proceed with a left turn, after having made observations which assure him that his turn will not unduly impede other overtaking traffic, in the reasonable reliance that overtaking traffic will not itself negligently disregard motor vehicle safety regulations.
As stated in the Faulkner opinion, 135 So.2d 496, 497: "In judging whether a left turn can be made in safety, a motorist has the unquestioned right to assume that the following traffic will observe all of the duties imposed upon it by law and common sense, such as that the following traffic is proceeding within the speed limit, will not pass at an intersection, and will not pass over a double yellow line, and is, moreover, keeping a proper lookout. * * * [Citations omitted.] It is also well recognized that a motorist who desires to make a left turn on a city street is not required by law to wait until there is no traffic in sight before attempting to do so. He has the unquestioned right to move after he has made a close and careful survey of traffic conditions about him and honestly believes, from such survey, that conditions warrant such action; * * * [Citations omitted] Moreover, the driver intending or attempting a left turn is not required to yield the right of way to all approaching traffic, however distant, but only to such approaching traffic as will be unduly delayed by his turn. * * * [Citations omitted]."
As the present trial court noted, "a motorist is free of negligence in making a left turn if he makes a proper signal and commences a left turn upon the reasonable belief, after observing approaching and overtaking traffic, that such turn would not unduly interfere with the progress of such approaching and overtaking traffic * * *." See, e. g., Burton v. Allstate Insurance Co., La.App. 3 Cir., 139 So.2d 817, and cases cited therein. In making a left turn after having made adequate observation and in reasonable reliance that the turn will not unduly impede overtaking traffic, the motorist is not required to maintain *610 a continuous observation to his rear; he is not required to anticipate that gross negligence on the part of the overtaking traffic will nevertheless cause a collision. See Moncrieff v. Lacobie, La.App. 1 Cir., 89 So.2d 471, containing facts analogous to the present.
Thus, under the facts of the present record, Hudgens had entered the intersection with seasonably signalled intention of making a left turn and had made adequate observation that he would not by his left turn unduly impede the progress of normal traffic and reasonably prudent motorists overtaking him. Under such circumstances, his primary duty was to maintain a lookout ahead rather than behind, and the applicable legal principle is expressed by LSA-R.S. 32:237, subd. B, which provides: "The driver of a vehicle approaching but not having entered an intersection shall yield the right to a vehicle within such intersection and turning therein to the left across the line of travel of his vehicle; provided, the driver of the vehicle turning left was given the signal required by R.S. 32:236."[1]
The trial court awarded the plaintiff special damages of $4,665.52 for (a) loss of earnings over seven months full disability and five months partial disability and (b) medical expenses incurred as a result of the accident. The plaintiff was also awarded $5,000 for his pain and suffering, which included the continuous wearing of a painful body brace for almost six months, together with residual discomfort thereafter for months. (Fortunately, the plaintiff will have no residual disability.) The trial court's award is supported by the evidence and is not excessive in comparison with other awards.
In seeking reduction of these awards, the defendant-appellants also contend, inter alia: (a) that they are entitled to credit against Hudgens' loss of earnings for sick leave and vacation pay received by Hudgens while he was absent from his work; (b) that much of the painful and prolonged treatment was a result of a misdiagnosis by the plaintiff's attending physician of a fractured vertebra resulting from the accident, whereas actually it was a less serious soft tissue injury.
However, as to (a), it has been held that a tort-feasor is liable for the loss of earnings caused by the tort and cannot claim credit for sick and annual leave which the injured party permanently uses up, since the injured person would thereafter have to bear a complete loss of pay upon subsequent illness or upon taking *611 the vacation to which he is otherwise entitled. Chandler v. F. Strauss & Son, La.App. 2 Cir., 194 So. 133, certiorari denied.[2] And as to (b)without necessarily holding that the attending physician made a mistake (which the defendant-appellants attempted to prove by the theoretical opinions of radiologists examining the x-rays many months after the accident), it is likewise well settled that the tort-feasor is responsible for the personal injuries of the injured person following the tort, even though such injuries are aggravated by the negligent or unskillful treatment of the plaintiff's attending physician; such aggravation is regarded as a part of the immediate and direct damages naturally flowing from the original tort, rather than as resulting from an intervening cause. See 25 C.J.S. Damages § 20, p. 477; 15 Am.Jur. "Damages", Section 457. Cf. also, Malone, Louisiana Workmen's Compensation Law and Practice (1951) p. 282, Sec. 233.
For the foregoing reasons, the judgment of the trial court is affirmed at the cost of the defendant-appellants.
Affirmed.
HOOD, J., dissents and assigns written reasons.
HOOD, Judge (dissenting).
I agree with the majority that defendant Mayeaux was negligent in attempting to overtake and pass plaintiff's bus at the intersection, and that his negligence in that respect was a proximate cause of the accident. I respectfully disagree with them, however, in their conclusion that plaintiff Hudgens was free from contributory negligence in making a left hand turn at the intersection under the circumstances presented here.
In my opinion the majority erred in finding that plaintiff had commenced his left turn when Mayeaux was "at least one-half to three quarters of the block to his rear." The only evidence upon which such a conclusion could be based is a statement made by Mayeaux himself that when he first noticed that the traffic light was green he "musta been maybe in the middle of the block I'd say maybe three-quarters of the block I guess." To me it seems clear that Mayeaux meant to say that he had traversed at least one-half to three-fourths of the block before the light turned green, and that he was between one-quarter and one-half block from the light at that time. A plat of the streets in that vicinity, drawn to scale, shows that this is an unusually short block, and upon being shown a copy of that plat Mayeaux located his station wagon at a point about 37 feet to the rear of the bus when he noticed that the traffic light was green and that the bus was still parked at the bus stop before it entered the intersection.
There were only two other witnesses who saw the station wagon before the accident. One, Frank J. Hardy, was a passenger on the bus, and he testified that the station wagon was one bus length (27 feet) behind the bus when plaintiff first started to make *612 a left turn, and that the station wagon was so close that it was apparent to him that a collision was imminent as soon as the left turn was started. This was a completely disinterested witness, and I find nothing in the trial court's reasons for judgment which indicates that his testimony should be discredited in any way. The other witness who saw the station wagon before the collision testified that the Mayeaux vehicle was alongside the bus when the left turn was begun, and it is this testimony which the trial judge apparently did not accept. Plaintiff Hudgens concedes that he did not see the station wagon at any time until a moment before the accident occurred. The evidence clearly establishes, I think, that the Mayeaux vehicle was not more than 37 feet behind the bus at the time the bus entered the intersection and began his left turn. If plaintiff had exercised reasonable care in observing the overtaking traffic, as he should have done, he would have seen that a left turn could not be made in safety at that time. It seems to me that his negligence in failing to exercise such care constituted a proximate and contributing cause of the accident.
I also disagree with the finding of the majority that the Mayeaux vehicle "flashed by" the bus, and that plaintiff Hudgens "had made adequate observation that he would not, by his left turn, unduly impede the progress of normal traffic and reasonably prudent motorists overtaking him." All of the witnesses who saw the station wagon, without any exception, testified that it was traveling between 20 and 25 miles per hour before and at the time of the accident, and the physical facts leave no doubt but that the station wagon could not have been traveling at any greater rate of speed than that. Also, I do not understand how the majority can reach the conclusion that plaintiff made "adequate observation" when he himself admits that he did not see the station wagon which was immediately to the rear of the bus until almost the moment of the impact.
The majority also concluded that as the Mayeaux vehicle "flashed by" (at a speed of 20 to 25 miles per hour) it "struck the very slightly protruding front wheel of the bus." The evidence, I think, establishes beyond question (despite Hudgens testimony to the contrary) that the left front part of the bus struck the right rear bumper of the station wagon, and that the point of impact was in the northwest quadrant of the intersection. According to the testimony of and the debris found by the investigating officers, the front of the bus had proceeded not more than 16 feet into the intersection (just a little more than one-half the length of the bus) when the accident occurred. The station wagon, being 14 feet long and having been struck on its rear bumper, obviously had traveled 30 feet into the intersection, the front of the station wagon having traversed almost the entire distance across Jackson Street before it was struck by the bus.
I further disagree with the conclusion of law reached by the majority that under the provisions of LSA-R.S. 32:237, subd. B a driver who has given a left-turn signal, has entered the intersection and has made an initial observation that a left turn could be made without unduly impeding the progress of normal traffic (which observation admittedly was not made in this case) may then proceed to complete the left turn without making any further observation of traffic behind him, even though he is prevented from making a normal left turn or is delayed or caused to stop in the intersection before completing that maneuver. In my opinion, if the left-turning driver is forced to stop in the intersection before completing his turn, he should make further observation to determine that the turn can be completed in safety before he resumes his turning maneuver. If motor trouble, for instance, compels him to stop in the intersection and to remain stalled there for three or four minutes I think he would be negligent in then resuming his left turn without making a further check of approaching *613 or overtaking traffic. In this case plaintiff is on the horns of this dilemma: If he was not delayed but succeeded in making a normal left turn then he was negligent in failing to determine that such a turn could be made in safety before proceeding to do so. If, on the other hand, he was forced to stop or was delayed in the intersection, then he was negligent in failing to make a further check of approaching traffic before resuming his left turn. Under any of the possible circumstances presented here, therefore, it seems to me that plaintiff is barred from recovery by contributory negligence.
For the reasons herein assigned, therefore, I respectfully dissent from the judgment rendered by the majority.

On Application for Rehearing.
En Banc. Rehearing denied.
HOOD, J., is of the opinion that a rehearing should be granted.
NOTES
[1] This shift of the duties imposed upon a left-turning motorist before and after he commences his maneuver was clearly demonstrated by our Supreme Court in the case of Bergeron v. Dept. of Highways, 221 La. 595, 60 So.2d 4. The pertinent facts of that case were that plaintiff's minor, while riding his bicycle, collided with defendant's truck which had turned left in front of him. In reversing the judgment of the Court of Appeal, which held the defendant liable and affirming the district court's judgment dismissing the plaintiff's suit, the court, after noting the disagreement in the respective calculations of the district court and court of appeal relative to speed and distance and consequent opportunity to avoid the accident, stated:

"But there is another point on which we believe the Court of Appeal erred in disagreeing with the trial judge and that is with regard to the duty of the truck driver to have seen the approaching bicycle as he proceeded to make his left hand turn.
"Assuming, as both courts found, that the driver of the truck was not negligent in any manner when he had stopped or slowed down and surveyed the situation before proceeding to make the turn, his duty then was to concentrate his attention on making the turn, and as stated in Rottman v. Beverly, supra [183 La. 947, 165 So. 153], and in Jackson v. Cook, supra [189 La. 860, 187 So. 195], "to keep a sharp lookout ahead to discover the presence of those who might be in danger.' He was turning from west to south, and, looking ahead in making the turn, that meant that he had to direct his vision gradually southward and away from the west, the direction from which the bicycle rider was coming."
[2] In support of their argument that they are entitled to such a credit, defendants cite the cases of Fenerty v. Culotta, Orl.App., 80 So.2d 537, amended 228 La. 649, 83 So.2d 888, and LeBlanc v. Southern Farm Bureau Casualty Insurance Co., La.App. 1 Cir., 104 So.2d 279. Both of these decisions allowed the defendants therein credit for sick leave benefits paid by the plaintiffs' employers during their period of disability resulting from the defendants' negligence. However, neither opinion indicates that the benefits received by the plaintiffs as a result of their disabilities were limited. In other words, the opinions do not show whether the amount of sick leave that the plaintiffs therein were entitled to was limited to the extent that, if they were disabled again thereafter due to disease or accident, they would receive nothing, having already used up all of their benefits. In the instant case however, the evidence shows that the using of the accrued sick leave deprived the employee of its availability for future illnesses.