169 So.2d 598 (1964)
Woodrow HUDSON, Sr., et al., Plaintiffs-Appellees,
v.
ALLSTATE INSURANCE COMPANY, Defendant-Appellant.
No. 10278.
Court of Appeal of Louisiana, Second Circuit.
December 1, 1964.
*600 Davenport, Farr & Kelly, Monroe, for appellant.
James M. Dozier, Jr., Farmerville, for appellees.
Before HARDY, GLADNEY, and BOLIN, JJ.
GLADNEY, Judge.
This action in tort was instituted by Woodrow W. Hudson, Sr. (individually, and as the Administrator of the estate of the minor, Ted Hudson) and Mrs. Fabrice Hudson, the parents of Ted Hudson, and by Woodrow W. Hudson, Jr., Jackie Lee Hudson, Bette Hudson Winstead, and Walter P. Hudson as sisters and brothers, alleged to be the legal heirs of the decedent, Ted Hudson, who died on August 22, 1962. The defendant is the Allstate Insurance Company, the public liability insurance carrier of Herbert L. Miller. The defendant filed an exception of no cause and no right of action as to the claims of the brothers and sisters of Ted Hudson. Following trial of the case on its merits the court rendered judgment awarding damages in favor of the plaintiffs, and the defendant, Allstate Insurance Company, has appealed.
The decision of the trial judge was accompanied by an opinion which thoroughly considers the facts and issues presented and except for a few alterations, we approve and adopt as our own that part of the opinion which follows:
"The defense to the action raises several pertinent issues. The defendant denies that Herbert L. Miller was negligent, but charges that the accident was due entirely to the negligence of Ted Hudson. In the alternative, defendant alleges that if Herbert L. Miller was negligent then, and in that event, the defendant charges that Ted Hudson was contributorily negligent, which bars the right of recovery in this case. There is also raised the issue or the contention by the defendant that the decedent, Ted Hudson, assumed the risk and that, therefore, his heirs are barred from recovery. Likewise the defendant raises the defense that the policy of insurance involved in this case specifically excludes employees of Herbert L. Miller from coverage and it charges that, at the time of the accident, Ted Hudson was an employee of its insured.
"The facts of the case are not materially disputed. Herbert L. Miller lives on a farm near Farmerville and is engaged in farming operations, especially the dealing in cattle. He had cut a large amount of hay, had baled it, and had it stored in a barn loft at Sterlington, Louisiana.
"Ted Hudson was the minor son of Mr. Woodrow Hudson, Sr. and Mrs. Fabrice Hudson. He lived with his parents on a farm not far from the Miller place. His father was employed at Sterlington and Ted was a full time student at the Farmerville High School. Ted was a nephew of Mrs. Herbert L. Miller.
"On December 29, 1961, Mr. Miller asked his nephew to accompany him, in a one-ton truck, equipped with high sides and end *601 gate for hauling cattle, to Sterlington, Louisiana for the purpose of getting a load of baled hay. No stipulated price or contract of hiring was entered into between Mr. Miller and Ted Hudson, nor was any understanding had as to the length of time or the conditions, if any, necessary to be followed by Ted Hudson.
"The parties reached the barn where Mr. Miller's hay was stored. The ground around the barn was wet and slippery. The truck was backed up near the opening in the loft where the hay was stored. Ted Hudson got into the barn, handed the bales of hay to Mr. Miller, who stacked them to a height of about nine feet in the bed of the truck and extending about three feet above the side rails of the truck. Likewise, the tail gate was let down and changed into a position about level with the truck bed and it was sufficient in size so that some twelve or fifteen bales of hay were stacked on it.
"Having completed the loading, the hay stacked on the truck was about the same height as the loft, and Mr. Miller directed Ted Hudson to step out of the barn onto the top of the load of hay and proposed that he would then move the truck forward, (in the mud) for a distance of four or five feet to clear the barn and to afford Ted Hudson the opportunity to climb down off of the hay onto the ground.
"As Mr. Miller attempted to move the truck forward, the motion of the truck caused the untied bales of hay to begin to rock, and as a result, Ted Hudson fell off the top of the load of hay, probably striking a side of the truck, and landing in a rather awkward position on the ground.
"He complained very little at the time, but suffered pain in the lower part of the back. The pain got worse and the next day he was carried to the Norris-Booth Clinic for treatment. He received the usual treatment for back strain, no improvement was had, and the doctor began to suspect a protruding or herniated disc, and traction was tried.
"No relief, however, having been accomplished, the patient began to suffer severe emotional upset. He was referred to Dr. Ernest Hartmann, an orthopedist at Monroe, Louisiana. Dr. Hartmann was of the opinion that Ted had a protruding lumbar disc.
"An operation was contemplated and he was sent to the St. Francis Hospital in Monroe, Louisiana, but the operation was cancelled because it was found that the patient had furuncles which might cause severe infection if the operation was performed. Thereafter, Ted Hudson made a rather satisfactory partial recovery without the operation. He was last seen by Dr. Hartmann on May 24, 1962. He was still suffering as a result of his injuries when on August 22, 1962 a .22 caliber rifle accidentally discharged, striking him in the abdomen, and taking his life.
"This court has reviewed the evidence and the record in this case and believes that no good purpose would be accomplished by relating and analyzing the many cases cited to the Court by able counsel on both sides in this case.
"We believe the accident in this case was caused by the negligence or want of care on the part of Herbert L. Miller. He directed the loading of his truck with bales of hay to a height of nine feet. He even loaded a large number of untied bales of hay on the end gate of the truck where there were no sides for bracing and where, at least, the hay was stacked on an unstable foundation. He instructed Ted Hudson to get down out of the barn by a dangerous process of stepping out onto the high, unsteady load of hay. Then he directed Ted Hudson to ride on top of the hay for four or five feet as Mr. Miller pulled away from the barn to allow Hudson to get down. At this point, either because of the way in which the truck was pulled forward, or because of the negligent method of stacking the hay which had been done by Mr. Miller, Ted Hudson fell from the top of the truckload of hay and suffered *602 the injuries involved in this matter. We believe the accident was the result of the negligence and want of care on the part of Mr. Miller. Nor can we see any contributory negligence on the part of the minor, Ted Hudson. He was not familiar with the hay loading and hauling business, and he assumed that his uncle was familar with such operation. Nothing that he did brought about the accident and we believe no showing of contributory negligence has been proven by the defendant in this case, who has the burden of establishing such contributory negligence. Neither can we find that Ted Hudson assumed the risk involved in stepping onto the top of the hay for the purpose of getting down out of the barn loft because he had a right to assume that the truck would be moved with proper caution and care, and that the hay had been stacked by Mr. Miller in a careful and prudent manner so as to prevent its falling or causing him to fall.
"We now come, we believe, to the most serious of the defenses offered by the defendant. The policy of insurance involved in this case contains the following exclusionary provision:
"`This policy does not apply:
"`(d) Under Coverage A, to bodily injury to or sickness, disease or death of any employee of the insured arising out of and in the course of (1) domestic employment by the insured, if benefits therefor are in whole or in part either payable or required to be provided under any workman's compensation law, or (2) other employment by the insured.'
"Thus, it will be seen that if at the time of the accident, Ted Hudson was an employee of Herbert L. Miller, within the meaning of the terms of the policy of insurance, then the accident and resulting injuries are not covered by the policy and the defendant, who alone is sued, would not be liable.
"In the interpretation of provisions of insurance policies, the Courts have always strictly construed such provisions against the insurer. The defendant confected the terms of the policy and had the right to make its intent clear. We believe, also, that the burden is on the defendant to prove that the accident comes within the exclusionary provisions of the policy.
"Each case of this kind must be decided upon the peculiar facts of such case. The relationship of employer-employee is a contractual one, and therefore, resolves itself into a question of fact to be determined by the evidence presented.
"Here, Ted Hudson was a minor. He was a nephew (by marriage) of Herbert L. Miller. He lived nearby, and as was natural, Mr. Miller sometimes invited Ted or his brother to assist him in small jobs. Never was any pay stipulated or expected. Never was any length of employment discussed or contemplated. Ted was free to help or not to help. He was free to do the job as Mr. Miller wanted it done, or he could have declined. It was always a pure and simple accommodation on the part of Ted Hudson. Never did he tell his uncle, `You owe me so much', but always `I charge you nothing.' Every time Mr. Miller gave the boy any money, it was a gratuity in appreciation for the help rather than a wage given in payment of service.
"Article 2669 of the (LSA) Revised Civil Code defines a contract of lease or hire as one `by which one party gives the other the enjoyment of a thing or his labor, at a fixed price'. There are three things necessary in the contract, as in sale, that is that there exist `the thing, price and the consent.'
"With these principles in mind, we review the relationship between Mr. Miller and Ted Hudson, and conclude that the essential elements of the contract of hiring *603 are missing. We do not believe that at the time of the accident Ted Hudson was an employee of Herbert L. Miller within the meaning of the exclusionary clause of the policy. Therefore, we believe that the defendant has obligated itself, under the terms of the policy issued by it, to pay the damages suffered by Ted Hudson in this case.
"The evidence shows that Mr. Woodrow Hudson, Sr. was required to pay the medical, hospital, and other expenses of Ted Hudson as a result of his injuries in the total sum of $563.22. The itemized bills for these matters were filed in evidence and identified as Plaintiffs' Exhibit 1, 2, 3, 4 and 5.
"Ted Hudson, now deceased, suffered severely for about 5 months as a result of this accident. He spent some time in the clinic and in the hospital. He had a severe emotional upset as a result of his physical injuries. Had he lived, it is quite probable that the back injury would have caused trouble for a long period of time. As a result of his untimely and accidental death from causes not related to the injuries involved in this case, the cause of action has passed to his surviving parents and brothers and sisters. We believe that an award for personal injuries, for pain, suffering, emotional upset, and other physical and mental pain and suffering by Ted Hudson, which are directly resultant from the fall which he suffered from the truck of Mr. Herbert L. Miller in the sum of $2,500.00 is adequate as the measure of damages in this case."
Counsel for appellant in their brief filed before this court has specified certain errors in the judgment of the trial court. These errors of the court will be discussed in sequence:
The first error complained of is that Miller was not negligent and Ted Hudson was guilty of contributory negligence or that he assumed the risk involved. Upon carefully reviewing the testimony we are of the opinion the finding of the trial judge is correct in that Miller knew or should have known of the potential present danger to Ted Hudson when he directed the boy to step on top of a high load of unsteady hay knowing that the truck would be moved forward and likely would cause the untied bales to begin to rock. Miller thus had the duty to avoid placing young Hudson in a position from which he might fall from the top of the hay to the ground, a distance of approximately nine feet. With respect to this defense we opine it does not make any substantial difference whether or not Ted Hudson accidently fell from the hay or whether he was forced to jump to the ground. Without passing on the question of the admissibility of the statement of Ted Hudson, which we consider of doubtful importance to defense, we note that Ted Hudson stated that "as Mr. Miller pulled up the bales of hay began to rock and fall off and seeing that he was going to be thrown off he jumped to keep from falling on his head and having the hay fall on top of him." No error, therefore, is found in the ruling of the trial judge either with respect to his finding of negligence on the part of Miller or as to the want of contributory negligence by Ted Hudson.
Secondly, appellant charges that Ted Hudson was an employee of Herbert Miller and, therefore, recovery may not be had under the exclusionary clause of Miller's liability insurance policy. Again we find the record fully supports the views of the trial judge holding there was no contract of hiring for the services of Ted Hudson. At most the arrangement was one of accommodation. The written statement of Ted Hudson, the exclusion of which appellant has objected to, narrates a statement by Hudson that he was hired by Miller. This statement elicited by an adjuster was taken in the hospital in the presence of his mother. It seems significant that facts *604 supporting a contract of hiring are not set forth therein. The word "hire" as so used is simply an unexplained conclusion. We feel justified in inferring that the legal implications of such a word were not comprehended by young Hudson and such a statement should not be allowed to outweigh other facts appearing in the record which disclose there was no contract of hiring in fact.
We have given full consideration to the excluded portions of said statement that appellant asserts were prejudicial to its cause and are of the opinion that if such declarations of the deceased had been ruled admissible our views as to the legal responsibility of defendants would not have been changed.
Another facet in this case is an objection by the appellant as to the judgment rendered in favor of Woodrow W. Hudson, Jr., Jackie Lee Hudson, Mrs. Bette Hudson Winstead and Walter P. Hudson against the Allstate Insurance Company. The insurer filed an exception of no right of action as to the interest of the brothers and sisters of Ted Hudson. Possibly through inadvertence Woodrow W. Hudson, Jr., Jackie Lee Hudson, Mrs. Bette Hudson Winstead and Walter P. Hudson were named as plaintiffs in the judgment rendered. The action for damages herein which inured to Ted Hudson during his lifetime is authorized under the provisions of LSA-C.C. Art. 2315 and in our opinion survived only in favor of the father and mother of Ted Hudson, Woodrow Hudson, Sr. and Mrs. Fabrice Hudson, respectively. Accordingly, the judgment will be amended to render the judgment herein only in favor of the father and mother.
Finally we observe that counsel for appellees has filed an answer to the appeal requesting an increase in damages. The award of $2,500.00 as made appears to us to be neither inadequate nor excessive, and therefore it is approved.
For the reasons hereinabove set forth the judgment from which appealed will be affirmed as amended and as recast to read:
It is therefore ordered, adjudged and decreed that there is judgment herein in favor of plaintiffs, Woodrow W. Hudson, Sr., and against the defendant, Allstate Insurance Company, condemning the defendant to pay the plaintiff the sum of $563.22 with interest thereon at the legal rate of 5% per annum from date of judicial demand until paid;
It is further ordered, adjudged and decreed that there is judgment herein in favor of the plaintiffs, Woodrow W. Hudson, Sr., and Mrs. Fabrice Hudson and against the defendant, Allstate Insurance Company, condemning the defendant to pay the plaintiffs the sum of $2,500.00 with interest thereon at the legal rate of 5% per annum from date of judicial demand until paid;
It is further ordered, adjudged and decreed that the defendant, Allstate Insurance Company pay all costs of this action, including cost of the appeal.