300 So.2d 865 (1974)
SCHWEGMANN BROS. GIANT SUPER MARKETS
v.
UNDERWRITERS AT LLOYD'S, LONDON, et al.
No. 5564.
Court of Appeal of Louisiana, Fourth Circuit.
June 26, 1974.
Order Granting Limited Rehearing August 5, 1974.
On Rehearing October 11, 1974.
Writ Refused October 4, 1974.
*866 Salvador Anzelmo, and R. Louis Carruth, New Orleans, for Schwegmann Bros. Giant Super Markets, plaintiff-appellee.
John J. Weigel, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for Certain Underwriters at Lloyd's, London, defendants-appellants.
Before BOUTALL, J., and LEON and NOBILE, JJ. Pro Tem.
BOUTALL, Judge.
This is a suit brought by Schwegmann Bros. Giant Super Markets against the Underwriters at Lloyd's London, et al. for recovery of losses alleged to be within the coverage of two separate insuring agreements or policies. In the course of the proceedings it was disclosed that the proper party defendants were a number of named underwriters, Peter John Tiarks being the lead underwriter on one policy and Jack Norman Creswell the lead underwriter on the other policy. The trial court found that the loss was covered by the policies and rendered judgment in the sum of $60,000, the amount of the two policies. From this adverse judgment the defendants have appealed.
The facts surrounding the loss are not seriously in controversy, and are as follows:
Schwegmann Bros. Super Market located on the West Bank Expressway in Jefferson Parish was served by Armored Car, Inc. for the safe transferral of money from the store to its banking facilities. Each night after the store was closed for business, employees of Armored Car, Inc. would call some time after 9:00 P.M., pick up the daily receipts, delivering them to the proper banking facility. On October 29, 1966, at approximately 9:00 P.M., a van-type truck, in appearance an authentic Armored Car vehicle, pulled in front of the store, and a man dressed in a uniform identical to or closely resembling that of a *867 regular Armored Car employee approached the Schwegmann guard at the entrance. The guard, suspecting nothing, admitted this man, directing him to the Chief Security Guard. Transactions with Armored Car were conducted only by two persons, Anthony J. Schwegmann, Manager of the store, and Joseph Terese, Assistant Manager. Mr. Schwegmann was presiding at a meeting of employees, and so Mr. Terese was located to handle the transaction in question.
Mr. Terese and the Chief Security Officer, Wilfred Maise, accompanied the bogus Armored Car employee to the vault room whereupon Mr. Terese opened the room and the parties entered. The daily receipts, consisting of money and checks, were contained in five bags on a cart in the vault room. The imposter signed a receipt for the bags and rolled the cart out of the vault room through the store, out of the store to where the truck was parked, and loaded the bags into the truck. He then returned the cart to the doorway and departed in the truck with the money. Some fifteen or so minutes later, the regular Armored Car vehicle arrived to pick up the money. It was then discovered that the Schwegmann employees had been duped and the money had been stolen.
It is conceded that the loss was greatly in excess of the coverage afforded, and that the policy limits should be paid if there was coverage. The policies cover both burglary and robbery loss, and as we appreciate the facts, we need only consider the robbery coverage. It is basic law that we resort to the terms and conditions of the policy in order to determine coverage, and in this policy the insuring agreement is as follows:
"For all loss * * * occasioned by Robbery or attempt thereat * * *"

* * * * * *
"(b) `Robbery' as used herein shall mean a felonious and forcible taking of property:
"(i) by violence inflicted upon a custodian;
"(ii) by putting him in fear of violence;
"(iii) by any other overt felonious act committed in the presence of a custodian and of which he was actually cognizant, provided such overt act is not committed by an officer or employee of the Assured; or"

* * * * * *
We have no difficulty in concluding that there was a felonious and forcible taking of property within the definition. The imposter was disguised to resemble an Armored Car employee and it is admitted that he was not an employee. He was armed with a revolver in his holster on his hip, and while so armed, he took possession of the money and pulled the cart containing it out of the store and loaded it into his vehicle. We cannot conclude that a forcible taking also means violence in taking as urged to us because the definition of robbery in itself demonstrates three different classes of forcible taking, by violence, by fear of violence, and by any other overt felonious act.
The evidence is that there was no violence or fear of violence simply because the Schwegmann employees at all times thought this was the regular Armored Car operation and hence had no fear or apprehension even though the imposter was armed, and on occasion had loosened his pistol in the holster, and had his hand on or near his pistol at various times. The point at issue is then whether his actions come under Section (iii) "by any other overt felonious act committed in the presence of a custodian and of which he was actually cognizant, * * *". It can hardly be seriously disputed that this was an overt felonious act committed in the presence of the custodian. And so the question is narrowed to a determination of the meaning "of which he was actually cognizant."
Plaintiff contends to us the proper interpretation of this clause is that the custodian *868 must be aware of the act of taking but it is not required that the custodian know at the time of the taking that the overt act is in fact or law felonious. As opposed to this the defendants contend that the proper interpretation is that the custodian know at the time of its occurrence that the overt act is of a felonious nature.
It is urged to us that the policy provisions are to be enforced as written and the words of the contract are to be understood in their common and usual significance without resorting so much to grammatical rules as to general and popular use. Article 1946 Louisiana Civil Code; Harmon v. Lumbermen's Mutual Casualty Company, 247 La. 263, 170 So.2d 646; Anderson v. Transamerica Insurance Company, La.App., 191 So.2d 758. Our courts are not to alter the terms of the policy under guise of interpretation. Sumrall v. Aetna Casualty & Surety Co., La.App., 124 So.2d 168. With these principles in mind, we are convinced that the usual and proper meaning of this phrase is that the custodian be cognizant of the overt action which constituted the crime, not necessarily that he be aware at the time that the actions he observed constituted the crime.
We are persuaded to make this interpretation by the rationale expressed in the case of Bourg v. Travelers Indemnity Company, 15 So.2d 166 (La.App. 1st Cir. 1943). In that case the attention of the custodian was occupied by an accomplice pretending to be a customer making some purchases, while a second person entered the store from the rear and stole money from a money drawer, without being observed by the custodian. It was not until shortly after, when another customer required change, that the custodian realized the money was taken. Although an element of fear had been raised by the actions of the accomplice, the custodian was completely uncognizant of the actual theft of the money. From the rationale therein we reason that the wording of the policy is designed to protect against accidental, unexplained, or pretended loss as opposed to an actual taking. In the present case the actual taking was observed and within fifteen minutes the import of those actions, that is the felonious nature of the taking, was established. We believe this fulfills the requirement of the policy. To hold for the construction contended by defendants, we would have to add to the policy "cognizant at the time of the act" or similar words.
For the reasons above set out, we are of the opinion that coverage was afforded under the two policies for the loss which occurred and that the judgment of the trial court should be affirmed.
Affirmed.

ORDER

GRANTING LIMITED REHEARING
Our original judgment held that coverage was afforded under the two policies of insurance for the loss which occurred and awarded judgment accordingly. On application for rehearing we are told, among other things, that we erred in holding that there was robbery coverage under Policy No. F-76911, providing excess insurance in the amount of $10,000.00, in force and effect at the time of the loss.
We grant limited rehearing solely for the purpose of inquiring into the issue of the effective date of the robbery coverage under Policy No. F-76911. In all other respects the application for rehearing is denied and the judgment remains in full force and effect.
In accordance with Rule XI § 4, Uniform Rules-Courts of Appeal, the rehearing is specially fixed for August 23, 1974 on briefs only. In addition to briefs already filed, additional or supplemental briefs may be filed by the parties after service on opposing counsel on or before August 19, 1974.
A limited rehearing was granted on the issue of coverage under one of the policies *869 of insurance for the loss sustained. Suit was brought for recovery under two policies: (1) a primary policy # $76910 in the amount of $50,000 and (2) an excess policy # $F-76911 which insured losses in excess of $50,000 up to $10,000 more so that the total amount of insurance available is $60,000. The trial court rendered judgment for the total amount of both policies on the main basis of burglary coverage. We affirmed the judgment on the basis of interior robbery coverage.
For the first time, it was called to our attention that while the primary policy affords coverage for robbery, the excess policy, # F-76911 did not provide for robbery coverage for this particular store until the endorsement of March 13, 1967. The robbery took place on October 29, 1966.
It has been urged to us on rehearing that we should not consider this issue of non-coverage because it was not argued before us until rehearing. However, we are required to render any judgment that is just, legal and proper upon the record on appeal. C.C.P. Article 2164. The policies were introduced into evidence, and the terms and conditions thereof speak for themselves. An examination of the excess policy # F-76911 shows that while there was coverage for burglary at the time of the loss, there was no coverage provided for robbery until the endorsement dated March 13, 1967. The proof is thus apparent that coverage was lacking and our judgment assessing payment in the amount of $10,000 under the excess policy is incorrect.
Accordingly, it is ordered, adjudged and decreed that the judgment appealed from be amended to delete the payment of the policy limits of $10,000 under excess policy # F-76911, and as thus amended, the judgment is affirmed in all other respects. Costs of all proceedings to be borne by appellant.
Amended and affirmed.