158 So.2d 417 (1963)
Sterling TRAHAN, Plaintiff-Appellant,
v.
STATE of Louisiana, through the DEPARTMENT OF INSTITUTIONS, Defendant-Appellee.
No. 936.
Court of Appeal of Louisiana, Third Circuit.
December 3, 1963.
Edwards & Edwards, by Edwin W. Edwards, Crowley, for plaintiff-appellant.
Teddy W. Airhart, Asst. Atty. Gen., Baton Rouge, for defendant-appellee.
Before FRUGEé, SAVOY and HOOD, JJ.
FRUGEé, Judge.
This is a suit for damages brought by Sterling Trahan against the State of Louisiana, through the Department of Institutions.
On June 23, 1959, plaintiff, who was an inmate at the state penitentiary, was acting as a trustee guard. A fellow trustee guard, Engelron, fired a shot in the road in front of certain prisoners he thought were attempting to escape. The bullet ricocheted and struck plaintiff, injuring his leg.
*418 Plaintiff was authorized by the Legislature to sue the State of Louisiana, through the Department of Institutions, and thereafter he brought suit in Acadia Parish. The district court dismissed plaintiff's suit and he appeals.
The trial judge dismissed the suit, concluding that the trustee guard, Engelron, was not an agent of the state and therefore the state was not responsible for his actions.
If a master-servant relationship existed between the trustee guard Engelron and the state, the state can be held liable for his negligent acts under the doctrine of respondeat superior. LSA-Civil Code Article 2320; Williams v. Marionneaux, 240 La. 713, 124 So.2d 919; 57 C.J.S. Master and Servant, §§ 555 and 561. The general statement defining the status of master-servant is found in American Jurisprudence, Vol. 35, Sec. 3, p. 445, which reads as follows:
"The essence of the relationship is the right to control. The four primary factors considered in deciding the above are
"1. Selection and engagement.
"2. Payment of wages.
"3. Power of dismissal.
"4. Power of control."
The factors of selection and payment of wages warrant a finding of no master-servant relationship in the present case. The state does not select the prisoner to be its employee, nor does the prisoner voluntarily agree to work for the state. It is not a relationship created by mutual consent, but by force and operation of law as a result of the prisoner's conviction of a crime. Even when a prisoner voluntarily assumes the position of a trustee, as in the present case, public policy does not permit his being elevated to the status of an employee of the State of Louisiana. A system whereby inmates are allowed to serve as trustees in a penal institution is a part of a rehabilitation program for certain prisoners. They are entrusted with certain duties in order to instill in them a sense of responsibility. The trustee program is not a method of hiring employees for the state. It is merely the performance of a duty by a convicted criminal who has been incarcerated in a public penitentiary.
Nor does the fact that a trustee is paid compensation warrant a finding of a master-servant relationship between him and the state. Under Act 554 of 1956 (LSA-R.S. 15:873) certain inmates receive compensation based on their skill and industry. But this is not considered payment for work performed. It is merely incentive pay, ranging from two cents to five cents per hour, to aid in the prisoner's rehabilitation.
The reason why a master-servant relationship can not exist between a prisoner and the state is well stated by a New Jersey court in Brown v. Jamesburg State Home For Boys, 60 N.J.Super. 123, 158 A.2d 445, as follows: "`It is inconceivable that a person who is serving a sentence duly imposed upon him by law and who is incarcerated in an institution established by a State, County, or Municipal Government, because he is performing some work while a prisoner, be deemed an employee of the governmental agent in charge of the jail. To hold otherwise would mean that the officials of a penal institution would be employers of their prisoners whenever they delegate to any of the prisoners the performance of any work that may be necessary to maintain their morale and to aid in their rehabilitation. This would be contrary to public policy.'"
Plaintiff argues that the state must be held liable for his injury because it was negligent in placing an inexperienced trustee in control of a dangerous weapon without giving him proper instructions in the safe use of the weapon and in failing to instruct the trustee on the procedures to be used in the event of an attempted escape.
*419 "`The general rule gathered from the cases is that in order to hold the State or the employees of a state who have charge of a prison liable for injury to one inmate inflicted by another inmate, there must be knowledge on the part of such officers in charge that such injuries will be inflicted, or good reason to anticipate such, and following that, there must be a showing of negligence on the part of these officials in failing to prevent the injury.'" St. Julian v. State, La.App., 98 So.2d 284, 285, and cases cited therein. In the present case it does not appear that the prison officials knew or had reason to know that the trustee guard would negligently fire his rifle into the ground and the bullet would ricochet and injure the plaintiff. The record shows that at the time of the accident Engelron was carrying a 30/30 rifle. He had been a trustee guard for over a year. He had been in military service for a period of three years in the Southwest Pacific, during which time he became experienced in the use of rifles.
For the foregoing reasons, the judgment of the district court is affirmed.
Affirmed.