330 So.2d 393 (1976)
STATE FARM FIRE & CASUALTY COMPANY, Plaintiff and Appellee,
v.
Robert Kelly DROST, Jr., et al., Defendants and Appellants.
No. 5388.
Court of Appeal of Louisiana, Third Circuit.
April 14, 1976.
Fred A. Book, Jr., Lake Charles, for defendants and appellants.
Stockwell, Sievert, Viccellio & Clements, Shaddock, John S. Bradford, Lake Charles, for plaintiff and appellee.
Before CULPEPPER, DOMENGEAUX and PAVY, JJ.
CULPEPPER, Judge.
This is a suit by the subrogated fire insurer of an apartment complex against the two defendants whose negligence allegedly caused the fire. The district court found the defendants liable and awarded plaintiff $8,000 in damages. Defendants appealed. Plaintiff answered the appeal, requesting that the award be increased.
The issues are: (1) Did the trial judge err in applying the doctrine of res ipsa loquitur to find defendants liable? (2) Did the trial judge err in holding that special damages may be reduced because of defendants' inability to pay?
The fire occurred at approximately 7:00 a.m. on the morning of August 26, 1972 in an apartment building in Sulphur, Louisiana owned by Rev. R. D. Harris. Shortly before the fire, the defendant, Robert Drost, Jr., had rented one of the apartments as a home for him and his future wife. He was to be married on August 26, 1972 and planned to move into the apartment shortly thereafter.
On the night before the fire, Drost and the defendant, Gordon Gremillion, a close friend, attended a rehearsal supper preceding the marriage the following afternoon.
*394 The supper ended at about ten o'clock that night, following which the defendants and Brian Cormier, another friend, went to several bars and continued drinking until approximately 3:30 or 4:00 a.m. when Cormier drove the two defendants to the apartment which had been rented by Drost. The three testified that Drost immediately went to bed in the bedroom and Gremillion on a couch in the living room. Cormier left and drove home.
At about 7:00 a.m., Gremillion awoke coughing. The apartment was filled with smoke. He opened the front door and went out to get some fresh air. Then he went back and carried the unconscious Drost out of the burning apartment. Gremillion testified that while carrying Drost, he noticed a flame flickering through the smoke above the stove near the exhaust vent. After re-entering the apartment to retrieve some clothes for himself and Drost, Gremillion ran to a nearby service station and reported the fire to the fire department.
Mr. Paul Frederick, the fire chief for the city of Sulphur, testified that after his men had brought the flames under control, he and Rev. Harris inspected the apartment to determine the cause and origin of the fire. The chief stated the major portion of the damage was above the electric stove in the kitchen and that the left front burner was in the "On" position with a charred pot on the burner. He further testified that there was one-half carton of eggs on the counter near the stove and broken eggshells in a waste basket. It was the chief's opinion that someone had been cooking eggs in grease in the pot on the stove and had left the burner on, and that this caused the fire.
Rev. Harris, the owner of the apartment, testified substantially to the same effect as Chief Frederick.
Both defendants testified that after going to bed they did not get up until after the fire had started. They denied that they had been in the kitchen, or that they had turned on the stove or that they had cooked eggs or anything else.
Defendant's wife, Katherine Drost, testified that a few days before the fire she had gone to the apartment and had fried some potatoes in a pot of grease on the stove. She says she left the pot of grease on the back corner of the stove. She also testified that in anticipation of their marriage and moving to the apartment, she had bought a few groceries and had placed some eggs in the refrigerator.
Mrs. Drost testified further that on the day of the fire she and her father, Mr. Robert McGee, went to the apartment to see if anything was salvageable. She and her father testified they pried open the ice box and found the carton of eggs inside. They broke one egg and found it was not good, so they placed the remainder on the counter near the stove.
The district judge, evaluated this conflicting testimony as follows:
"There is a direct conflict between testimony of the defendants and the Fire Chief and the owner, Harris. It must be remembered that the owner had collected the money that was due him by the insurance company, and certainly the Fire Chief had no interest in the outcome of this law suit. As we weigh this testimony we must conclude that the Fire Chief was truthful in stating that his investigation revealed a charred pot on the left front burner of the electric stove, which burner control was left in an `on' position."
After quoting from Boudreaux v. American Insurance Company, La., 264 So.2d 621 (1972) the applicable law regarding the doctrine of res ipsa loquitur, the trial judge then concluded:
"As we apply the principles of the Boudreaux case to the facts at hand, we must conclude that the defendants are liable for the damages incurred. The doctrine *395 of res ipsa loquitur is applicable and must be invoked wherein negligence is inferred on the part of the defendants because the facts indicate that the more probable cause of the damage was leaving the fire `on' under the pot of grease or oil, in the absence of any other plausible explanation of the fire by witnesses who are found credible. The question to be answered in these cases is `Do the facts of the controversy suggest negligence of the defendant rather than some other factors, as the most plausible explanation for the accident?' Answering this question with the credible evidence in this case it must be answered in the affirmative that it was more probable than not that the fire resulted from the negligence of the defendants. There is no question that both of these defendants were under the influence of alcoholic beverages, and it is questionable that they actually remembered activities of those early morning hours. Having concluded that the fire was caused by the negligence of the defendants, the next question is damages."
The evidence is clearly sufficient to support these factual findings of the trial judge based on his evaluation of the credibility of the witnesses and reasonable inferences drawn from the evidence. Canter v. Koehring Company, La., 283 So.2d 716 (1973).
The next issue is the quantum of the award. The plaintiff insurer paid to Mr. Harris the sum of $38,712.67 for his fire loss. The district court awarded plaintiff judgment in solido against the two defendants for the sum of only $8,000. He expressly considered the circumstances that defendants are young men who own no property and who earn only about $150 per week. Due to the inability of the defendants to pay a large judgment, the court did not award the full amount of the damages caused by the fire.
Plaintiff answered the appeal, contending that special damages may not be reduced because of defendant's inability to pay. The only case cited in support of this contention is Becnel v. Ward, La.App., 286 So.2d 731 (4th Cir. 1974), in which there was a district court judgment for $520,000, of which $375,000 was for general damages for personal injuries and $145,000 was for medical expense and other special damages. Defendants appealed, urging as grounds for reduction of this large award their inability to pay. The appellate court stated that the interest on the special damages alone would consume all of defendants' income, and that defendants could not be saved from bankruptcy even if no general damages were awarded. Accordingly, the court concluded that the case was not one for critical analysis of jurisprudence regarding quantum. However, the court did make the statement: "Further, the special damages may not be reduced since they are not a matter of the trial court's discretion like general damages are." There is no further explanation of this statement and no citation of authorities. It is obvious this was not a serious issue in the case. We doubt the case is authority for plaintiff's contention.
Plaintiff has not cited, nor have we found, any other case supporting its contention that special damages may not be reduced because of defendant's inability to pay. Of course, the rule is well established in Louisiana jurisprudence that the financial ability of defendant to pay is a circumstance which may be considered in assessing an award for damages. Lambert v. Foy, La.App., 224 So.2d 11 (1st Cir. 1969); Urk v. Southern Farm Bureau Casualty Insurance Company, La.App., 181 So.2d 69 (2d Cir. 1965) and the authorities cited therein.
It is our view that defendants' ability to pay is a factor which can be taken into consideration in awarding either special or general damages. In the present case, we find no error on the part of the trial judge in this respect.
*396 For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendants-appellants.
AFFIRMED.