379 So.2d 281 (1979)
Roy HRYHORCHUK, Plaintiff-Appellant,
v.
Roy M. SMITH et al., Defendants-Appellees-Appellants.
No. 7267.
Court of Appeal of Louisiana, Third Circuit.
December 19, 1979.
Writ Granted March 21, 1980.
*283 Drewett, Jacques & Thomas, Robert W. Thomas, Lake Charles, for plaintiff-appellant.
Plauche, Smith, Hebert & Nieset, Reid K. Hebert, Stockwell, Sievert, Viccellio, Clements & Shaddock, John S. Bradford, Lake Charles, Robert H. Marve, III, Woodrow W. Wyatt, Baton Rouge, Allen, Gooch & Bourgeois, Raymond M. Allen, Lafayette, Stephen R. Streete, Rester, Van Norman & Wright, Kenneth M. Wright, Hall, Lestage & Hall, H. O. Lestage, III, DeRidder, Raggio, Cappel, Chozen & Berniard, Fred L. Cappel, Camp, Carmouche, Palmer, Barsh & Hunter, G. Michael Bourgeois, Woodley, Barnett, Cox, Williams & Fenet, E. E. Woodley, Scofield, Bergstedt & Gerard, J. Michael Veron, Alvin B. King, Lake Charles, for defendants-appellees-appellants.
Before CULPEPPER, GUIDRY and YELVERTON, JJ.
GUIDRY, Judge.
Plaintiff instituted this suit seeking to recover for personal injuries sustained in an accident which occurred in ward five of Calcasieu Parish on April 28, 1976. When the trial of this matter commenced in May of 1978 the following parties were defendant:
(1) Roy M. Smith and his liability insurer, State Farm Mutual Automobile Insurance Company (hereafter, State Farm).
*284 (2) The Calcasieu Parish Police Jury (hereafter, Police Jury) and its comprehensive general liability insurer, United States Fidelity & Guaranty Company (hereafter, USF & G).
(3) The Calcasieu Parish Sheriff's Department (hereafter, Sheriff's Department) and its liability insurer, North River Insurance Company (hereafter, North River).
(4) The State of Louisiana, through its Department of Public Safety (hereafter, Department of Public Safety).
(5) The State of Louisiana, through the Department of Transportation and Development, Office of Highways (hereafter, Department of Transportation).
(6) William Clifton and his automobile liability insurer, Pennsylvania General Insurance Company, (hereafter, Pennsylvania General).
(7) State Farm Mutual Automobile Insurance Company (hereafter, State Farm), plaintiff's uninsured motorist carrier.
Subsequent to the commencement of trial plaintiff learned that there were additional liability insurers of the Police Jury, i. e., Travelers Insurance Company (hereafter Travelers) and Houston General Insurance Company (hereafter Houston General) and a liability insurer of the Department of Public Safety, Travelers Insurance Company. Upon securing this knowledge, plaintiff offered to file a supplemental petition naming these insurers as additional parties defendant. The trial court refused to allow the filing of this supplemental petition. Because of scheduling difficulties the case was only partially tried in May of 1978 and rescheduled for completion in November of 1978. On August 3, 1978, plaintiff filed an additional suit seeking a declaratory judgment holding that Roy M. Smith was an insured under the policies of insurance issued by Travelers and Houston General to the Police Jury and the policy issued by Travelers to the Department of Public Safety. This suit entitled, Roy Hryhorchuk v. Calcasieu Parish Police Jury et al., La. App., was consolidated for purposes of trial with this matter.
Almost simultaneous with the filing of the declaratory judgment suit, Roy M. Smith filed a third party demand in the first suit against the Police Jury, the Department of Public Safety, the Sheriff's Department, the Department of Transportation, and their respective insurers. The trial court allowed the filing of the third party demand against all defendants except Travelers. Trial of the consolidated matters resumed in November of 1978. At the close of the plaintiff's case the trial court sustained several motions for directed verdicts and dismissed plaintiff's petition for a declaratory judgment and also dismissed all of plaintiff's demands against the Police Jury, USF & G, the Sheriff's Department, North River, the Department of Public Safety and the Department of Transportation, as set forth in the initial suit. Thereafter, the trial continued against the remaining defendants and on the third party demand of Smith, resulting in a judgment as follows:
(a) in favor of plaintiff and against defendants, Roy M. Smith, William Clifton, State Farm and Pennsylvania General, in solido, for $40,000.00 (the limits of liability of the policies issued by State Farm and Pennsylvania General);
(b) in favor of plaintiff and against Smith and Clifton, in solido, for the sum of $587,389.24; and,
(c) dismissing all incidental and third party demands excepting the demand of intervenor, Lawanda Hryhorchuk, plaintiff's wife, who separate in property as a result of a judgment of separation and board, had intervened seeking a share of plaintiff's recovery.
Following rendition of judgment State Farm and Pennsylvania General deposited their respective limits of liability with interest in the registry of court. Judgment was rendered allowing the deposit in full satisfaction of the judgment rendered against the insurers.
*285 Plaintiff and defendants, Roy M. Smith, State Farm, William Clifton, and Pennsylvania General, appealed. Appeals were likewise taken in the declaratory judgment suit, which bears our docket number 7268, in which matter we this day render a separate decree.
Appellants made several specifications of error which are summarized as follows:
(1) The trial court erred in finding Roy M. Smith negligent and his alleged negligence a proximate cause of the accident.
(2) The trial court erred in finding William Clifton negligent and his alleged negligence a proximate cause of the accident.
(3) The trial court erred in failing to find Roy Hryhorchuk guilty of contributory negligence.
(4) The trial court erred in failing to find that Roy M. Smith was an executive officer, employee, and/or direct agent or representative of either, all, or any combination of the following: the Police Jury; the Sheriff's Department; the Department of Public Safety; and, the Department of Transportation.
(5) The trial court erred in failing to find that Roy M. Smith was a legally commissioned deputy sheriff of Calcasieu Parish.
(6) The trial court erred in failing to find that Roy M. Smith was an insured under either, all, or any combination of the policies of insurance issued to the entities names in subsection (4) above.
(7) The award made by the trial court for lost wages and loss of future wages is excessive.
(8) The trial court erred in refusing to consider the inability of the individual defendants to respond in judgment in fixing the award.
The trial judge rendered written reasons for judgment in which he sets forth the facts surrounding the accident which precipitated the filing of this law suit. We have carefully reviewed the voluminous record in this case and find that, except for minor discrepancies explained in footnotes, the trial judge's written reasons, which we quote, clearly and accurately set forth the factual setting.
"On April 27, 1976 ROY HRYHORCHUK was severely injured in an unusual accident. This accident occurred when WILLIAM R. CLIFTON, driving a 1976 Dotson (sic) pick-up truck, collided head-on with an automobile owned by ROY SMITH, and parked in the highway by Smith. The occurrence was on Highway # 12, in the western part of Calcasieu Parish.
Hryhorchuk filed suit against Clifton, Smith, their respective insurers, and his own insurer, who had issued him two policies with uninsured motorist's coverage.

 The insurance picture is as follows:
INSURED INSURER LIMITS
William Clifton Pennsylvania Insurance
 Co. $10,000.00
Roy M. Smith State Farm Mutual
 Automobile Insurance
 Company $10,000.00
Roy Hryhorchuk
(Uninsured
Motorist) State Farm Mutual
 Automobile Insurance
 Co. (2 policies) $20,000.00

Although a number of defendants were included in this action earlier, all, save the defendants listed above, have been dismissed by the court.
A discussion of the facts, and how the court arrived at these facts, follows:

On the night of the accident, Hryhorchuk had been visiting with his family in Texas. That evening, on his way back home he passed over a bridge on Highway # 12 and noticed a pick-up truck straddling the bridge railing off of the roadway.[1] Hryhorchuk recognized the *286 truck as belonging to a friend of his, one Huey P. Thompson. He also saw Thompson sitting on the railing. Hryhorchuk continued home, let off his wife and children, and returned to the bridge to see if Thompson needed any assistance. While Hryhorchuk was on his way back to the bridge, the next event, in what was to be a strange sequence, occurred.

Curtis R. Bartel was also driving Highway # 12 in route from Texas. He was being followed by a friend in another automobile, whose name was Ricky Marcantel. As Bartel approached the bridge, he found that he had to swerve abruptly to miss an automobile coming from the opposite direction.[2]This sudden maneuver confused his friend, Marcantel, and Marcantel temporarily lost control of his automobile and struck the guard railing.

This was a minor accident and the occurrence of this accident itself is disconnected with the fact that the pick-up truck was lodged on the guard rail. While there may be some argument that this would be a strange coincidence, a closer view of Bartel's testimony and all other facts show that there was no connection between the position of Huey Thompson's pick-up and Ricky Marcantel's accident. The importance of this determination will be seen later on.[3]

William Chapman, on the night of the accident, was an employee with the Department of Transportation and was on duty at a weigh station off of Highway # 12, some four miles east of the bridge under discussion.[4] About 9:30 P.M. on that night he learned of an accident on the bridge from a passing trucker. He radioed Louisiana State Police Headquarters at Troop D. He was requested by the dispatcher there to have a `stand by' to flag traffic because of the time it would take before a trooper could arrive. Chapman first called the Sheriff's Department and evidently no Deputy was readily available. He then called Roy Smith. The reason that he call [sic] Smith next is because Smith was the Constable for Ward 5, which was the Ward of Calcasieu Parish in which this was all happening.

Smith lived about six miles from the accident site and drove on over at Chapman's request.
When he arrived, he first saw Thompson's truck sitting on the bridge railing. He then observed a car on the north shoulder west of the bridge, probably the Marcantel vehicle, and he determined that there had been two accidents.

Now the next unusual thing in this sequence occurred. Rather than parking his vehicle on the shoulder of the road, Smith decided to park it in the east-bound lane of traffic, facing west. The point he selected was somewhere in the middle of the bridge,[5] close by the Thompson vehicle.

Smith turned off the head lights of his car, but turned his emergency blinkers on. In addition, he reached on top the car and placed a `Kojak' light. This is a single incandescent bulb with a flashing mechanism, and covered with a red-tinted plastic cover. He raised the hood of his automobile a few inches, in order to allow the engine to remain cool because his motor was left running to supply power for the emergency blinkers and the flashing light.

*287 In the meantime Hryhorchuk had already arrived at the scene. He had engaged Thompson in some conversation, and because Thompson's attitude was uncooperative, Hryhorchuk was in some kind of dilemma. He did not want to leave his friend but he wanted to go back home.

While he was mulling over this problem, he was standing off of the roadway in the front of Thompson's truck. This would place Hryhorchuk somewhat behind Smith's automobile. Several other people were sitting on the guard rail and Smith and Bartel were standing somewhere near the front of Smith's automobile.
Down the road, Aaron Ellis was waving traffic down with a six-volt hand lantern. Ellis had come upon the scene and decided to assist in this manner. He had taken a position about 100 feet west of the bridge, had parked his automobile off on the shoulder, and had been successful in alerting about ten vehicles of the problem at the bridge.

William R. Clifton had traveled Highway # 12 many times. On the night in question he was also coming from Texas. Between 2 and 2½ miles from the bridge, Clifton saw a red blinking light. Presumably, it was the light on Smith's car. But as he approached the bridge site he does not remember seeing it again. In his mind he thought that what he had seen was the caution light, which is near the weigh station some four miles further on down the road.[6]
Ellis waved his light at Clifton and upon realizing that Clifton was not going to stop, moved off of the roadway out of the path of car. About this time someone yelled something like: `He's not stopping!'. The testimony indicates that it was probably Ellis who gave this verbal warning.
Smith and Bartel saw the danger and scooted out of the way. Clifton did not become aware of the Smith vehicle directly in his roadway until a car length or so away. The two vehicles met in a frontal impact and the Smith automobile hurdled (sic) backwards, striking Hryhorchuk and knocking him over the embankment and into the ravine below. Hryhorchuk sustained injuries which will be discussed at length in a subsequent section."
With the foregoing facts in mind we proceed to a consideration of the several specifications of error raised by appellants.

NEGLIGENCE OF ROY M. SMITH
The trial judge concluded that Smith was negligent in parking his automobile so as to completely block the east bound lane of La. 12 and that this negligent conduct was a proximate cause of the accident and the injuries sustained by plaintiff. In reaching this conclusion the trial judge points to the fact that the parking of his automobile in the highway served no useful purpose as the Thompson pick-up truck was well off of the road and presented no obstacle or danger to the flow of traffic.
The record fully supports the trial judge's finding that the Thompson vehicle was well onto the south shoulder of the road and presented no danger to oncoming traffic. This being considered and considering further that it was well after dark and the only devices available for warning oncoming motorists were the blinkers on the Smith car and a small "Kojak" light we agree that Smith's conduct was negligent and a proximate cause of the accident.
LSA-R.S. 32:141 makes it unlawful to park or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or leave such vehicle off such part of the highway. In speaking to the duty imposed by the cited statute our brethren of the Fourth Circuit in Haas v. Southern Farm Bureau Casualty Insurance Company, 321 So.2d 380 (La.App. 1975), writ refused, La., 323 So.2d 133, stated:
"... The duty to refrain from parking on a highway is imposed as a *288 safety measure in order to keep traffic arteries open. The obstruction of highways not only impedes passage, but also creates a risk that a confused or inattentive driver will collide with the stationary vehicle. The risk of harm created by a motorist's obstructing a highway imposes a reciprocal duty on motorists to refrain from doing so." (footnote omitted)
In seeking to justify his actions, Smith suggests that at the time of the accident he enjoyed the status of the driver of an emergency vehicle and in the alternative that his negligent conduct is excusable because he enjoyed the status of a rescuer. We find merit in neither of these contentions.
Although LSA-R.S. 32:24 permits the driver of an authorized emergency vehicle to "park or stand" on the main traveled part of the highway such privilege is subject to the specific statutory condition that it will be exercised with due regard for the safety of others. The fault arising from the conduct of the driver of an emergency vehicle is excusable under the cited section only if the action taken is not unreasonable and is reasonably required by the situation of the emergency. In Sullivan v. Hartford Accident & Indemnity Company, 155 So.2d 432 (La.App. 2nd Cir. 1963), writ refused 245 La. 64, 156 So.2d 604, the court singled out two factors which should be considered in determining whether a particular dangerous act of a driver of an emergency vehicle is excusable:
"(1) The inherent danger of the act of the driver; (2) Whether the dangerous act was necessary to the performance of the emergency function."
When these two factors are considered it immediately becomes apparent that Smith can derive no comfort from the provisions of LSA-R.S. 32:24 for his act in completely blocking the east bound lane of the highway in question, after dark, was inherently dangerous and unnecessary to the performance of the emergency function.
Further, in our opinion, these principles are equally applicable to one who seeks to avoid liability for his own negligent conduct claiming the status of a rescuer. See Hebert v. Perkins, 260 So.2d 15 (La.App. 4th Cir. 1972); Miller v. Carter, 346 So.2d 748 (La.App. 1st Cir. 1977); cf. Chastain v. Allstate Insurance Co., 212 So.2d 243 (La.App. 2nd Cir. 1968).
We find no error in the trial court's conclusion that on the occasion in question Roy M. Smith was negligent and his negligent conduct a proximate cause of the accident.

NEGLIGENCE OF WILLIAM CLIFTON
In disposing of this issue the trial court stated:
"A night traveling motorist, in good weather and on a good road, is not expected to drive with such caution as to anticipate unusual obstructions in the highway. To determine whether or not a night driver is negligent in striking such an object, the whole of the circumstances surrounding the incident must be examined, and the broad requirement of reasonableness must be applied.
In the instant case, the object in the road, the Smith vehicle, was stationery and in the middle of Clifton's lane of traffic. That Smith's emergency blinkers were on and visible to Clifton is not disputed. Whether or not the `Kojak' light was visible to Clifton, has been disputed.
It has been suggested that the hood on the Smith automobile obstructed the view of the flashing light for traffic coming from the west. It is the testimony of all who saw the raised hood, that it was not high enough to cause this visual obstruction. The argument that the hood perhaps `worked up' because the engine was running is speculation not based on any evidence. The court finds that as a matter of fact, the flashing red light should also have been visible to Clifton.
An additional circumstance is that Aaron Ellis, using the hand lantern some 100 feet to the west, tried to slow Clifton.

A review of all the circumstances leads the court to the conclusion that Clifton, as a reasonable and prudent driver under these circumstances, should have been alerted by the various warning lights, *289 activities on the bridge, and congestion of cars on the shoulder, to have brought his automobile into such control as to have stopped if something were in the roadway. To the contrary, the testimony discloses that he reduced his speed very little, if any. The court finds that William Clifton is also guilty of proximate negligence leading to the injuries sustained by Hryhorchuk."

The standard of care of the night-time driver is one based upon the broad requirement of reasonableness. Craker v. Allstate Insurance Company, 259 La. 578, 250 So.2d 746 (La.1971). The trial court considered the evidence in light of this standard and concluded that William Clifton was negligent and that his negligence was a proximate cause of the accident. We find no manifest error in this holding.

CONTRIBUTORY NEGLIGENCE OF HRYHORCHUK
The trial court held that the plaintiff Hryhorchuk was free from any negligence. The evidence in the record makes clear that at the time of accident plaintiff was well off of the traveled portion of the highway. There is nothing in the record which would suggest that he was guilty of any negligent conduct which could in any way have contributed to the accident or to his injuries. In any event, a careful study of the recent case of Baumgartner v. State Farm Mutual Auto Ins. Co., 356 So.2d 400 (La.1978) makes clear that contributory negligence is no longer a defense to a pedestrian's claim for damages sustained due to the negligence of a motorist.

AT THE TIME OF ACCIDENT WAS ROY M. SMITH AN EXECUTIVE OFFICER, EMPLOYEE, AND/OR AGENT OF EITHER, ALL, OR ANY COMBINATION OF THE FOLLOWING: THE POLICE JURY, THE SHERIFF'S DEPARTMENT, THE DEPARTMENT OF PUBLIC SAFETY, AND THE DEPARTMENT OF TRANSPORTATION?
The trial court concluded that at the time of accident Smith was neither the employee, agent or executive officer of any of the entities named above. We agree.
In the recent case of Savoie v. Fireman's Fund Insurance Company, 347 So.2d 188 (La.1977) our Supreme Court set forth succinctly the criteria for the finding of an employee-employer relationship. Specifically, the court stated:
"... the word `employee' understood in its common and usual sense, signifies one who is a party to an employment contract, express or implied.

In determining whether an employment relationship exists ... the jurisprudence of this state has uniformly held that the most important element to be considered is the right of control and supervision over an individual. Hickman v. Southern Pacific Transport Co., 262 La. 102, 262 So.2d 385 (1972); Blanchard v. Ogima, 253 La. 34, 215 So.2d 902 (1968). Factors to be considered in assessing the right of control are the selection and engagement of the worker, the payment of wages and the power of control and dismissal. Dauzat v. Crites, 237 So.2d 697 (La.App. 4th Cir. 1970); Wambles v. State, 283 So.2d 331 (La.App. 4th Cir. 1973); Trahan v. State, 158 So.2d 417 (La.App. 3rd Cir. 1963). Moreover, La. Civil Code art. 2669 provides that:

`... (H)ire is a synallagmatic contract, to which consent alone is sufficient, and by which one party gives to the other the enjoyment of ... his labor, at a fixed price.'"
Considering the above the evidence makes crystal clear that at the time of accident no employee-employer relationship existed between Smith and any of the entities above named. There was no synallagmatic contract existing between them. None had selected or engaged him for employment. None had supervision or right of control over him and none had the power to dismiss him. None except, the Parish of Calcasieu, contributed to the payment of his wages. The fact that Roy M. Smith was the duly elected Constable of Ward 5 of Calcasieu Parish at the time of accident and that the *290 Parish of Calcasieu paid the greater part of his salary did not have the effect of making Smith an employee of the Police Jury.
It is well settled that a "state office" is one created by the constitution or state statute. State v. Dark, 195 La. 139, 196 So. 47 (La.1940); State v. Titus, 152 La. 1011, 95 So. 106 (La.1922); Chappuis v. Reggie, 222 La. 35, 62 So.2d 92 (La.1952). The office of Constable is a creature of the legislature. LSA-R.S. 13:2581.[7]
In the rather recent case of Cosenza v. Aetna Insurance Company, et al., 341 So.2d 1304 (La.App. 3rd Cir. 1977), we considered the issue as to whether the Parish of Rapides was vicariously responsible for the actions of the Clerk of the City Court of Pineville, Louisiana. In concluding that the Parish of Rapides was not legally liable for acts of the Clerk of the City Court we stated:
"Although the Parish of Rapides contributes to the salaries of both the city judge of the Pineville City Court and his employee, the city court clerk, we are of the opinion that the relationship between the Parish and the Judge (and his clerk) terminates at that point. The City Court and the office of City Judge are created by legislative act based upon authority derived from the state constitution. As such, the city judge is a state officer and the police jury of Rapides Parish or any other executive body at that level is powerless to interfere with or direct the activities of the court.

In the case of State ex rel. Bass v. Mayor and Board of Aldermen of City of Oakdale, 204 La. 940, 16 So.2d 527 the city council attempted to eliminate the office of city marshall (created by the Legislature) by drastically reducing that officer's salary. The Supreme Court held that when the Legislature has created an office a city council cannot nullify or abolish it by any direct or indirect means.

In cases involving the operations of sheriffs' departments our courts have held that a police jury or parish has no authority to interfere with the operations of a sheriff's department, the latter being a constitutionally created office. See Wood v. Maryland Casualty Company, 322 F.Supp. 436 (D.C.La.1971) (Western District of Louisiana), and State ex rel. Police Jury of Parish of Vernon v. Davis, 120 La. 862, 45 So. 838 (La. 1908).

Following that principle, the logical conclusion was stated in Nielson v. Jefferson Parish Sheriff's Office, 242 So.2d 91 (La.App. 4th Cir. 1970):

`The court is of the opinion that as a matter of law, the Parish of Jefferson exercises no power or discretion in the functioning of the Jefferson Parish Sheriff's Office. The Sheriff's Office is a constitutional office, LSA-Const. Art. 7 § 65. It exists and functions independently of the governing body of the Parish. LSA-Const. Art. 14 § 3(c). Therefore there can be no vicarious liability on the part of the Parish of Jefferson for the acts of the Sheriff of Jefferson or any of his deputies.'
See also the separation of powers doctrine embodied in LSA-Const. 1974 Art. 2, Sec. 1.
Likewise, we are of the opinion that the Parish of Rapides exercises no power or discretion in the functioning of the City Court of Pineville, Louisiana. Thus, we fail to see how vicarious liability whatsoever exists on behalf of the Parish of Rapides for alleged tortious conduct of an employee of the constitutionally and statutorily created City Court of Pineville. Simply stated, the City Judge is a state officer, and the Clerk is his employee. The Parish of Rapides is not an employer or master of the City Court as alleged in the City of Pineville's petition. Ergo the Parish of Rapides is, under no theory, responsible for the actions of the Judge of the City Court of Pineville or those of his employees."
In the recent case of Foster v. Hampton, 352 So.2d 197 (La.1977) the Supreme Court refused to hold a local governmental entity (East Baton Rouge Parish) liable for the *291 alleged tortious acts of a state officer (deputy sheriff). In Foster, supra, after concluding that a deputy sheriff is an officer of the state, the court quoted approvingly from the court of appeal opinion which rejected plaintiff's demand against the Parish as follows:

"The Court is of the opinion that as a matter of law, East Baton Rouge Parish exercises no power or discretion in the functioning independently of the governing body of the Parish. La.Const. of 1974, art. 5 Sec. 27. There can be no vicarious liability on the part of the parish for the acts of the sheriff or his deputies. See Nielson v. Jefferson Parish Sheriff's Office, supra, at page 94 [242 So.2d 91 (La.App. 4th Cir. 1970]."

In support of their contention of error appellants rely on the case of Honeycutt v. Town of Boyce, 341 So.2d 327 (La.1976) suggesting that the holding of that case is to the effect that a local government entity is liable for the torts of a state officer and that liability does not depend on the amount of control exercised by the local government over such state officer. We disagree with plaintiff's analysis of that decision. In Honeycutt the employee-employer relationship between Hillman (Town Marshal) and the Town of Boyce was assumed rather than addressed. In that case the court simply held that the trial court erred in sustaining an exception of no cause of action, where, according to the pleadings, plaintiff complained of injury caused by the negligence of Honeycutt when the latter was performing duties incident to his employment with the Town of Boyce.
We conclude that the principles of law recently reiterated by this court in Cosenza, supra, and by our Supreme Court in Foster, supra, are applicable to the circumstances of this case. The office of constable is a state office created by act of the legislature. Although the Parish contributes to the salary of the constable, it has no power, authority or discretion in the functioning of that office. Accordingly, as a matter of law, the Parish of Calcasieu is not vicariously liable for the delicts of Constable Smith.
Neither does the evidence in the record reflect that at the time of accident Roy M. Smith was acting as an agent or direct representative of any of the entities above named.[8] An agent may be defined as one who acts for or in the place of another by authority from him. LSA-C.C. Articles 2985, 2986, 2992; 2 C.J.S. Agency § 1c, pgs. 1023-1025. Downs v. Delco-Light Co., 175 La. 242, 143 So. 227 (La.1932). There is no evidence in the record which would even suggest that Smith, at the time of accident, was acting as an agent or representative of any of the governmental entities above named or that he had any authority verbal or otherwise to do so. Smith simply went to the accident scene as the Constable of the 5th Ward of Calcasieu Parish upon being advised by a Department of Transportation employee that an accident had occurred on the bridge. It is inconceivable that as a result of this call, from a weigh station employee at the request of the dispatcher who suggested that he get someone to "stand by", Smith became the agent or direct representative of the Police Jury, the Sheriff's Department, the Department of Public Safety and the Department of Transportation.
Finally, we observe in connection with this specification of error that obviously Smith did not enjoy executive status with any of the named entities.

DID THE TRIAL COURT ERR IN FAILING TO FIND THAT ROY M. SMITH WAS AN INSURED UNDER EITHER, ALL OR ANY COMBINATION OF THE POLICIES OF INSURANCE ISSUED TO THE GOVERNMENTAL ENTITIES MADE DEFENDANT?
In rejecting appellants' demands against the several insurers the trial court stated:
*292 "... Each one of these policies provides that the responsibility of the company, the insurance company, is to pay for or to reimburse a named insured for specified legal liabilities. There were some special categories of persons other than named insureds for whom coverage is provided, but they were very limited, and Roy Smith did not fall within any of these particular special categories.
Considering that the court has held above that the insureds cannot be liable in this matter, it follows that the insurers cannot be liable." (Tr. pgs. 1624 and 1625)
We agree that unless Roy M. Smith falls within a special category of persons for whom coverage is provided under the several policies, that there is no coverage. It is well settled that if there is no liability on the part of the insured, there can be no liability on the part of the insurer under its policy. Smith v. Kelly Labor Service, 239 So.2d 685 (La.App. 4th Cir. 1970), writ ref. 257 La. 173, 241 So.2d 531 (La.1970); Foster v. Hampton, supra.
The special categories of persons, of which the trial judge spoke, include executive officers, directors, stockholders, employees, agents or direct representatives. In addition the policy issued by North River covers "each legally commissioned Deputy Sheriff" and the policy issued by USF & G covers "Policemen". We have previously demonstrated that Smith, at the time of accident was not an executive officer, employee, agent or direct representative of any of the governmental entity insureds.
Appellants suggest that Smith was a "legally commissioned Deputy Sheriff" and as such an insured under the North River policy, because at the time of accident he possessed an honorary commission as such. We find no merit in this contention. Being possessed of an honorary commission as a deputy sheriff is simply what the term implies, i. e., designating an office or position held as an honor only without service or pay. The North River policy grants coverage only to a "legally commissioned deputy sheriff". One holding an honorary commission as a deputy sheriff is not a "legally commissioned deputy sheriff". Accordingly there is no coverage for Smith under the North River policy.[9]
Nor do we find coverage for Smith under the USF & G policy which provides coverage for the general category "policemen". The category can only be considered to cover "policemen" for whom the insured has some responsibility. We have concluded that the Parish of Calcasieu has no power, authority or discretion over the office of constable and bears no responsibility for his actions while in the performance of his duty. Since the insured is not liable there can be no liability on the part of the insurer. To decide otherwise would expose the insurer to liability for the delicts of all persons who might fall within this general category who keep order, detect crime, etc., regardless of their employment affiliation. This we decline to do.

IS THE TRIAL COURT'S AWARD EXCESSIVE?
Appellants, Smith and Clifton, urge that the award by the trial court for lost wages and future loss of income is excessive and not supported by the evidence. Additionally, they contend that the total award is excessive and should be reduced because of appellants' inability to respond in judgment.
The trial court awarded plaintiff the total sum of $627,389.24, which includes general damages in the amount of $100,000.00 and special damages totaling $527,389.24. The special damage award includes loss of past wages fixed at the sum of $31,929.75; future loss of income, fixed at the sum of *293 $471,209.93; and, medical expenses of $24,249.56. The total insurance available from all sources amounts to the sum of $40,000.00 which results in a personal judgment against Smith and Clifton, in solido, for the sum of $587,389.24 with legal interest from date of judicial demand until paid.
Upon trial of this matter Smith and Clifton presented uncontradicted evidence concerning their ability to respond in judgment. The evidence presented by Smith reflects that he is a 56 year old married man. He is presently employed as a janitor at the DeQuincy High School earning a gross salary of $142.80 per week. In addition to his salary as a janitor, Smith receives $150.00 monthly as constable. Smith's assets include a $600.00 savings account, a boat and motor valued at $500.00 and 7½ acres and a modest home with a total estimated value of $7000.00.
William Clifton is 27 years old, married and the father of one child. He is employed by Kansas City Southern as a railroad engineer and earns $8.00 per hour. His assets include his home, a Datsun automobile and a pick-up truck. His present indebtedness on the listed assets amounts to the sum of $55,400.00.
Although the trial court is his written reasons acknowledged that the award made was "far beyond the reach" of either defendant he concluded that the award should not be reduced because of their impecuniosity stating:
"The award granted by the court will far exceed the available insurance coverage from the defendant insurance companies. This means that the balance of the award will have to be shouldered by the two individual defendants, Roy Smith and William Clifton. Evidence of the inability to pay a large judgment was introduced by each of the defendants. There is no question in the court's mind that the testimony of each defendant regarding his financial status was correct and that they would be unable to pay the difference between the award and available insurance proceeds.

The decision by the court of the defendants' inability to pay results from a jurisprudential rule of long standing. It was said in Lacaze v. Horton, 100 So.2d 252 (La.App. 2nd Cir. 1958):

`It must be borne in mind that this principle is not to completely relieve a defendant of liability for reparation of damages inflicted by his own negligence, nor should it be considered as justifying the reduction in the allowance of damages to a bare minimum.'
Considering the amount of damages which should be allowed to Hryhorchuk, a reduction by this court of that figure to an amount which would be in the financial grasp of the two defendants, would result in an extreme usage of the doctrine which has not be (sic) contemplated by our jurisprudence. The court finds that the `inability to pay' rule is functional only when there is a common ground which can be reached between the damages due a claimant and the financial abilities of the defendant. As is in this case, when the award is far beyond the reach of the defendant, a reduction down to a point attainable by the defendants would violate the rule voiced by the Lacaze case above. For these reasons the inability of the defendants to respond in damages is not considered to be applicable and will not be used by the court to reduce the amount of the award."
We believe that our learned trial brother erred and conclude that the award must be reduced.
It is well settled in our law that the financial ability of a defendant to pay is a circumstance which must be considered in assessing an award for damages, both general and special. Urk v. Southern Farm Bureau Casualty Insurance Company et al., 181 So.2d 69 (La.App. 2nd Cir. 1965), writ refused 248 La. 909, 182 So.2d 661 (1966), and authorities therein cited; Lambert v. Foy, 224 So.2d 11 (La.App. 1st Cir. 1969); State Farm Fire & Casualty Company v. Drost, 330 So.2d 393 (La.App. 3rd Cir. 1976); Davis v. Moore, 353 So.2d 740 (La.App. 4th Cir. 1977) writs refused, La., 354 So.2d 1379 and La., 354 So.2d 1384.
*294 In Davis, supra, our 4th Circuit Brethren set forth the origin, theory and application of the rule to be as follows:
"... The `inability to pay' rule is a creature of jurisprudence dating back to 1898 in Loyacano v. Jurgens, 50 La.Ann. 441, 23 So. 717 (1898). Ever since, it has been repeatedly espoused by courts of this state. See 22 Am.Jur.2d Damages §§ 319 and 320. As applied by Louisiana courts, the rule allows evidence of the ability of defendant to respond in damages to be considered in determining the amount of the judgment to be awarded. The theory behind the rule was stated by the court in Cole v. Sherrill, 7 So.2d 205 (La.App. 2nd Cir. 1942), cert. denied:
`It has never been considered good policy to bankrupt one to pay another even though the award granted is not in line with other cases involving the same injuries and might not fully compensate the plaintiff for the injuries he received. Fair justice between both parties must be arrived at.'

When ability to pay is considered, plaintiff may only be compensated to the degree that it does not impose an undue hardship on the defendant. However, `(a)pplication of the (rule) should not be carried to extremes.' Smith v. Freeman, 31 So.2d 524, 526 (La.App. 2nd Cir. 1947). As was so aptly stated in Lacaze v. Horton, 100 So.2d 252 (La.App. 2nd Cir. 1958):

`It must be borne in mind that this principle is not intended to completely relieve a defendant of liability for reparation of damages inflicted by his own negligence, nor should it be considered as justifying the reduction of the allowance of damages to a bare minimum. Either of these alternatives, in our opinion, would be an extreme application of the principle and would result in effecting a gross injustice toward a plaintiff, under the guise of the application of a humane consideration for the plight of an impecunious defendant' 100 So.2d at 255."

We cannot agree that the "inability to pay" rule is functional only when there is a common ground which can be reached between the damages due a claimant and the financial abilities of the defendant. If the application of the rule were dependent upon such circumstance its purpose would in most cases be frustrated.
We have carefully reviewed the record in light of the legal principles set forth above and, everything being considered, we conclude that a total award to plaintiff, over and above the amount of insurance available, in the sum of $50,000.00 does substantial justice between the parties. Since we determine, for the reasons set forth above, that the award must be reduced we do not consider appellants' remaining assignment of error concerning excessiveness of the award for lost wages, past and future.
For the above and foregoing reasons we amend the judgment appealed from so as to reduce the award in favor of plaintiff, Roy Hryhorchuk, and against the defendants, Roy M. Smith and William Clifton, individually, jointly, severally and in solido, from the sum of $587,389.24 to the sum of $50,000.00, with legal interest on such sum from date of judicial demand until paid. In all other respects the judgment appealed from is affirmed. Costs of this appeal to be borne by Roy M. Smith, William Clifton, Pennsylvania General Insurance Company and State Farm Mutual Automobile Insurance Company.
AFFIRMED AND AMENDED.
NOTES
[1] The record reflects that the truck was actually straddling the guard rail, located on the south shoulder of La. 12, on the approach to the bridge. The guard rail, from its western terminus to its connection with the bridge abutment measured 99'. At its western terminus the guard rail is 6½ from the pavement edge but it curves and gradually approaches the pavement edge until at the bridge abutment it is flush with the pavement edge. The record further reflects that the truck was astride the guard rail some 60' or 70' west of the bridge.
[2] The record reflects that Bartel swerved to avoid a car which he was following whose driver for some reason swerved and applied his brakes (Tr. pg. 1651).
[3] Following this occurrence the Bartel and Marcantel vehicles were turned around and driven onto the north shoulder of La. 12 some distance west of the bridge.
[4] Actually the record reflects that the weigh station is located about ½ mile east of the bridge under discussion although it is approximately 4 miles east of the Sabine River bridge.
[5] When the trial judge refers to the "middle of the bridge" he speaks of the middle of the approach to the bridge. See footnote 1.
[6] See footnote 4 as concerns respective locations of the bridge and weigh station.
[7] This section was continued as a statute from La.Const. of 1921, Art. 7, Sec. 49.
[8] Appellants suggest that such a relationship existed between Smith and all or one of the named entities so as to bring Smith within the definition of an insured under the policies of insurance issued to such entities, not for the purpose of holding the entity itself vicariously liable. See Blanchard v. Ogima, 253 La. 34, 215 So.2d 902 (1968).
[9] Since we conclude that the trial court did not commit error in dismissing plaintiff's suit as against the Calcasieu Parish Sheriff's Department and North River, we do not consider nor pass upon the Sheriff Department's exception of no cause of action, filed in this court, to the effect that the "Calcasieu Parish Sheriff's Department" is not a legal entity and cannot be sued as such. Liberty Mutual Ins. Co. v. Grant Parish Sheriff's Department, 350 So.2d 236 (La. App. 3rd Cir.), writ denied 352 So.2d 235 (La. 1977).