| iWOODARD, Judge,
dissenting.
While I share my colleagues’ appraisal that Mr. Ortego deserves the lion share of fault, I do not agree that the other parties bear no legal responsibility. I respectfully dissent from the majority’s reapportionment of fault for the following reasons:
Negligence of St. Cyr and Roy Motors, Inc.
Initially, I believe that finding Dane St. Cyr and Roy Motors free from fault was a misapplication of the law, permitting us to perform a de novo review. However, even under the manifest error standard of review, the law and facts reveal that a finding of no liability on St. Cyr’s part was clearly wrong because no reasonable factual basis for this determination existed.
As the majority points out, the wrecker qualifies as an authorized emergency vehicle under La.R.S. 32:24. Mott v. Babin Motors, Inc., 451 So.2d 632 (La.App. 3 Cir.1984). Although La.R.S. 32:24 “permits the driver of an authorized emergency vehicle to ‘park or stand’ on the main traveled part of the highway[,] such privilege is subject to the specific statutory condition that it will be exercised with due regard for the safety of others.” Hryhorchuk v. Smith, 379 So.2d 281, 288 (La.App. 3 Cir. 1979), affirmedd in part, reversed in part on other grounds, 390 So.2d 497 (La.1980), cert. denied, 459 U.S. 1061, 103 S.Ct. 484, 74 L.Ed.2d 629 (1982). In fact, it is the legal duty of all drivers, including emergency vehicles, to protect traffic in all events. La.R.S. 32:141. (Emphasis added.) This implies taking affirmative action.
As the majority concludes, it immediately becomes apparent that St. Cyr can claim no exemption under La.R.S. 32:24 for parking his vehicle across the center line, partially blocking the right lane; he
had a duty to exercise due care for the safety of oncoming traffic and breached that duty by blocking both northbound lanes of 1-49. The act of blocking these at night on a high-speed roadway was inherently dangerous ... the uncontroverted testimony was to the effect that this act was unnecessary to the emergency function the wrecker was performing. If the jury concluded otherwise, such a conclusion was clearly wrong.
Likewise, I submit that it would have been just as clearly wrong for the jury to have concluded that the “the risk of the harm which actually occurred (in the instant case) was not within the scope of protection afforded by the duty which was breached,” as the majority urges was an appropriate finding. The harm that occurred from St. Cyr’s breach of duty was a collision between his wrecker and the Ortego vehicle, which resulted in the death of Ortego. For what other reason would this duty “to protect traffic” *786 exist, but for the purpose of protecting against an accident such as this one and its resulting harm? Further, not only was St. Cyr’s conduct inherently dangerous, it was painfully foreseeable that blocking a high-speed roadway, onto which troopers were directing traffic, on a weekend night, encompasses the risk that an inattentive or impaired driver might approach the scene and thereby cause an accident, even with lights on the wrecker.
In the instant case, the trial court found that Lt. Guidry’s vehicle was three to four feet west of the center line, that “Dane St. Cyr pulled his wrecker into the righthand lane of travel immediately before the accident occurred,” and that the impact took place in the right lane. (Emphasis added.) The uncontroverted testimony showed that this dangerous act was completely unnecessary to the emergency function the wrecker was there to perform and that St. Cyr did so on his own. The majority noted:
[¡¡Both officers testified that the lighting configuration was set up to protect the left lane of travel and to channel the oncoming traffic into the right lane. However, St. Cyr neither sought instruction from the troopers concerning his operation nor informed them that he was going to block the right lane. When the wrecker moved into a position blocking the right lane, Lt. Guidry immediately moved into a position to direct traffic around the wrecker and onto the right shoulder. The accident occurred only seconds thereafter. (Emphasis added.)
To fulfill his legal responsibility, and perhaps even prevent this accident entirely, St. Cyr could have simply to coordinated his efforts with the troopers prior to taking any action. Instead, he acted entirely on his own, without warning, and so quickly that no other protective action could be taken.
The record establishes that St. Cyr’s actions exponentially constituted a “reckless disregard for the safety of others,” amounting to a breach of his legal duty “to protect traffic.” The risk of the harm that occurred in the instant case, was clearly within the ambit of risk contemplated by such an express legal duty embodied in La.R.S. 32:141 and 32:24. Further, there is no reasonable factual basis for the jury’s finding of no fault. Therefore, we are bound to reverse. Maranto v. Goodyear Tire & Rubber Co., 94-2603, 94-2615 (La.2/20/95); 650 So.2d 757. Accordingly, I would reverse the jury’s finding as to no fault on the part of St. Cyr and apportion fault to him, along with Ortego and the state troopers.
Negligence of the State
The State contends that the trial court should have applied a “reckless disregard” standard under La.R.S. 32:24, rather than a negligence standard, to the troopers. Section 24 is designed to permit certain drivers to disregard certain regulations of the road. Hryhorchuk, 379 So.2d 281. However, it does not exempt the police from failure to control an accident site. The duty to properly control the scene of an accident is an independent duty. Curry v. Iberville Parish Sheriffs Office, 405 So.2d 1387 (La.App. 1 Cir.1981), writs denied, 410 So.2d 1130, 1135 (La.1982). A careful reading of the trial court’s reasons for judgment reveals that the trial court 14held the troopers liable, not for where they parked their vehicles, but for diverting traffic into a lane in which there was an obstruction.
Both troopers testified that the configuration was set up to protect the left northbound lane of travel and channel oncoming traffic into the right lane. Thus, even a reasonably prudent driver could be lulled into a sense of security that the right lane of travel was unimpeded and open to traffic. Retired State Trooper and accident reconstructionist, John Blunschi, testified that the wrecker could have accomplished its activity in the left lane without impinging on the right lane. Neither trooper spoke to the wrecker operator or gave him instructions when he arrived. Trooper Ardoin testified that he saw the wrecker park in the left lane with the front of the wrecker over the center line. No flares were set out to protect the right lane. The only safeguard the troopers took to protect the right lane was taken by Lt. Guidry, who stood near the wrecker lane and directed traffic around the wrecker with his flashlight, which was not equipped with a traffic cone.
*787 The troopers had the responsibility of being in control of this very dangerous scene. The unreasonable risk of harm created by the troopers to inattentive night drivers was inherent in this situation, where traffic was being channeled into a partially blocked lane of travel. It is true that, given the seconds between the time the wrecker pulled into the right lane and the impact, there was not much, if anything, the troopers could have done to prevent this accident at that point. However, had the troopers coordinated with St. Cyr 'prior to his taking any action, this accident might have been completely averted. For example, the troopers could have merely blocked both lanes until his maneuver was complete.
Therefore, I would hold that the trial judge’s findings that Trooper Ardoin and Lt. Guidry were at fault in causing the accident was reasonable in light of the evidence found in the entire record. Stobart v. State, Dep’t of Transp. & Dev., 617 So.2d 880 (La.1993).